## CIRCUIT COURT OF WARREN COUNTY

Morris D. Heater
and Helen Heater

v.

Warren County
Board of Supervisors

May 4, 1995

Case No. (Chancery) 94-186

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court for trial on April 26, 1995, on the issue of whether the Board of Supervisors' decision to deny a conditional use permit for a small subdivision in an agricultural zoning district was proper. The parties appeared with their counsel, Hubert H. Marlow, Jr., for the Plaintiffs, and Douglas W. Napier for the Defendants. Most of the material facts were stipulated, all the prefiled exhibits were admitted into evidence, and evidence was heard ore tenus and argued by counsel. Upon consideration whereof, the Court has made the following decision to affirm the Board's decision and to dismiss the landowners' Bill of Complaint.

### I. Findings of Fact

The following facts were stipulated to or found by the greater weight of the evidence.

Approximately one year prior to November 1, 1994, the Plaintiffs, Morris D. Heater and Helen Heater, husband and wife, purchased a 27-acre tract of undeveloped land in Warren County, Virginia. This real estate is located on State Route 624 adjacent to existing residential subdivisions known as Shannon Woods Estates and Wildcat Knob Subdivision. Shannon

Woods Estates Subdivision had twelve residential dwelling units occupied at the time that the Plaintiffs purchased their property. Both the property purchased by Plaintiffs and Shannon Woods Estates are zoned agricultural.

After purchasing the property, the Heaters, as permitted by right under the Warren County Subdivision Ordinance, subdivided this 27-acre tract into three one-acre" lots which were located on State Route 624 together with a five-acre lot and an almost twelve-acre lot. The five-acre lot and the twelve-acre lot did not directly connect with State Route 624 but rather were separated from State Route 624 by the three one-acre lots fronting State Route 624, and an additional proposed six one-acre lots which were to front on State Route 624.

On or about June 22, 1994, the Plaintiffs applied for a conditional use permit under the Warren County Zoning Ordinance and for a Class B Subdivision, as that term is defined under the Warren County Subdivision Ordinance, to subdivide the remainder of the 27-acre parcel into six lots of slightly over one acre each, which said lots were to be adjacent to the three one-acre lots previously subdivided as a matter of right by Plaintiffs. All nine one-acre, more or less, tracts were to front side-by-side on State Route 624.

Filed with the application was a letter from the Warren County Health Department, which stated that the Warren County Health Department had reviewed the property in question in reference to the conditional use request and that the Health Department approved these lots for a three-bedroom septic system and wells.

A letter from the Virginia Department of Transportation directed to the Warren County Planning Director was also filed with the application, and it stated that the Virginia Department of Transportation had a made a field review for a conditional use permit on Route 624 in reference to this request and that VDOT would issue three new entrance permits on Route 624 to the proposed lots as shown on the plat. The Virginia Department of Transportation further stated in that letter that it did not foresee any adverse effects on traffic by allowing this request.

The application filed by the Plaintiffs with the Warren County Planning Director provided for three or four private driveways connecting the six proposed one-acre lots with State Route 624. The application provided for common driveways located between adjacent lots, so that two lots could use one driveway for the vehicles from those lots to State Route 624.

The application first came before the Warren County Planning Commission on July 13, 1994, when the Plaintiffs requested the Planning

Commission to authorize this application for a public hearing pursuant to the requirements of Warren County Code § 180-63(C) and also the requirements of Virginia Code § 15.1-431. One of the Planning Commission members, Mrs. Grubbs, at that hearing stated that she had been asked how many houses were in the Shannon Woods Subdivision adjacent to and behind the Plaintiffs' property and she learned that there were twelve houses whose residents used the access road, which is an easement alongside the Plaintiffs' property. Mrs. Grubbs said that she was concerned about there being many entrances into State Route 624, Morgan Ford Road. She stated that she thought that it would be better if there was a road behind the exposed lots and cars travelled on that road to the easement road to access State Route 624. Mrs. Grubbs stated that presently there were nineteen exit roads into State Route 624 within four-tenths of a mile.

Gary Mitchell, the Warren County Planning Director stated to the Commission at the July 13, 1994, hearing that usually access roads such as Mrs. Grubbs suggested were often placed at the front of the lots, like a service road. Plaintiffs' attorney said that the Warren County Subdivision Ordinance did not allow such roads. He said that the ordinance required state-maintained roads. He said that the Plaintiffs, in their request, tried to keep the number of entrances to a minimum and that one entrance served two lots. The attorney stated that the Plaintiffs could not afford to do the type of road required by the Warren County Subdivision Ordinance and Plaintiffs could only afford gravel driveways to the lots.

At the July 13, 1994, Planning Commission meeting, Mr. Scheuer, another Planning Commission member, said that he agreed with Mrs. Grubbs. He said that, if the driveways were duplicated across State Route 624 when that land is developed, there would be a potential for a dangerous situation.

At the July 13, 1994, Planning Commission meeting, Commission Member Mrs. Grubbs asked Mr. Heater if he would have a problem with putting in a service road. Mr. Heater stated that the State had already approved his driveways. Mrs. Grubbs said that she was concerned about adding more driveways to a portion of the road which already has many driveways.

At the July 13, 1994, Planning Commission meeting, the Planning Director told the Planning Commission that it is allowed to impose stricter standards than the State requirement. Mr. Mitchell explained that the State sets basic standards and, if the Planning Commission wants stricter standards, they can impose them as conditions to the permit.

At the conclusion of that discussion during the July 13, 1994, Planning Commission meeting, Commission Member Mrs. Grubbs moved to authorize advertisement for a public hearing, which motion was unanimously passed by the Commission.

The application for a conditional use permit came up for public hearing before the Planning Commission at its regular meeting on August 10, 1994. At the August 10, 1994, meeting, Peter Lemmon, President of the Shannon Woods Property Homeowners Association, spoke against the application. He stated that nine of the twelve families living in the subdivision of Shannon Woods and belonging to the association were present at the hearing and that he was their spokesman. Mr. Lemmon stated that the nine one-acre lots, that Plaintiffs either had already subdivided or were asking for a conditional use permit to subdivide, adjoin the land of Shannon Woods Subdivision and is divided from Shannon Woods by a road easement. Mr. Lemmon stated that Senator Ball, the previous owner of the land who created Shannon Woods Subdivision and sold the lots to the property owners in Shannon Woods, had created restrictions which included a verbal promise that the land would never be subdivided into less than five-acre lots unless and until sewer and water service is brought to those lots. He stated that the property owners of Shannon Woods were concerned that their lots would be substantially devalued by the nine one-acre lots close by which the Plaintiffs propose to subdivide. Mr. Lemmon further stated that Shannon Woods property owners were concerned about potential septic and well problems with so much development in such a small area.

At the August 10, 1994, Planning Commission meeting, Betty Hoynoskie of Shannon Woods also spoke against the application. She stated she was concerned about the adverse effect development could have on wells which could go dry or be contaminated. She also stated that she had a safety concern about the number of cars entering and exiting along the small stretch of road.

At the August 10, 1994, Planning Commission hearing, Lester Cole of Shannon Woods also spoke against the application. He stated that he believed that his land will suffer from water runoff when new homes are built. He also said that he was concerned about his well going dry from all of the new development.

At the Planning Commission meeting of August 10, 1994, Joanne Cole of Shannon Woods spoke against the application. She said that the Plaintiffs did not address concerns about wells and drainage either in their application or in their comments to the Planning Commission.

At the August 10, 1994, Planning Commission meeting, the County Attorney told the Planning Commission that the relevant factor the Planning Commission needed to consider was whether the subdivision complied with the intent of the agricultural district as stated in the Warren County Zoning Ordinance. He said that the Zoning Ordinance § 180-63 stated that, in granting a conditional use permit, the use had to be compatible with existing or planned development in the general area. He further said that the zoning ordinance stated that conditions and restrictions could be set to ensure that the use is compatible with the area within which it is proposed to be located. The County Attorney also said that the Zoning Ordinance stated that, if compatibility could not be accomplished or if it is determined that the use is not in accordance with all applicable standards, the conditional use permit could be denied. He said that the zoning ordinance also stated the proposed use will be such that pedestrian and vehicular traffic associated with such use will not be hazardous or in conflict with existing and anticipated traffic. The County Attorney said that the zoning ordinance requires that the governing body shall take into consideration the objectives and intent of that chapter and conditions can be placed to prevent the use from changing the character and established pattern of development in the community. The County Attorney concluded by saying that the Planning Commission needed to take all of these factors into consideration.

At the August 10, 1994, Planning Commission meeting, Planning Commission Member Mrs. Grubbs said that she was concerned about the impact of the three entrances into State Route 624 and the burden it would put on the road to have nine additional houses, most with two cars per household, in an area where twenty-one entrances already exist along that five-tenths mile section of the road. She said that she was concerned about the numerous stops school buses would have to make along the road.

At the August 10, 1994, Planning Commission meeting, a Planning Commission Member said that he shared Mrs. Grubbs concerns. He said that he was also concerned about the inference of Sen. Ball's intent for the land and asked the County Attorney whether the Planning Commission could consider that. The County Attorney said that in the absence of a written document, the Planning Commission could not infer the Senator's intent one way or the other.

At the August 10, 1994, Planning Commission meeting, Commission Member Mrs. Cable said that she was also concerned about the number of entrances into State Route 624. She said that a service road would ease the problem.

At the August 10, 1994, Planning Commission meeting, Commission Member Mrs. Grubbs said that with the road, the cars could use one entrance, rather than so many. She said that there was too much strip development on State Route 624, which is a narrow road. Mrs. Grubbs asked Mr. Heater if a service road in front with a green way buffer was possible, and Mr. Heater said that telephone cables and electric lines were at the front. Mrs. Grubbs further said that the zoning ordinance § 180-63(4) would legally allow the Planning Commission to oppose the subdivision, because it states that "The proposed use shall not be such that pedestrian and vehicular traffic associated with such use will not be hazardous or in conflict with the existing and anticipated traffic in the future." She said that the anticipated traffic on that road in the future would be tremendous and, even if the road is widened, the same entrances would be there.

At the conclusion of the August 10, 1994, Planning Commission meeting, the Planning Commission moved to hold a work session prior to a final vote on the application at the Planning Commission's September 14, 1994, meeting.

At the September 14, 1994, meeting of the Planning Commission, Member Mrs. Grubbs moved to recommend denial of the application based on the following reasons. She said that Article I of the Warren County Zoning Ordinance § 180-2(C) stated that an agricultural subdivision is supposed to be more open. She said she felt that the Plaintiffs' plan was not in keeping with the County's future growth. She said that, based on § 180-2(A) and sections of § 180-2(D), the crowding of six additional lots along Route 624 continues the strip development of an inadequate roadway and would add to the congestion causing additional hazards to public safety. She further stated that, under § 180-2(I), the proposed use does not protect against the overcrowding of the land. She also stated that under § 180-2(A), it would not create a harmonious community. She concluded by saying that, based on the foregoing reasons, she was moving to forward the application recommending denial.

At the September 14, 1994, Planning Commission meeting, Commission Member Stockner seconded the motion saying that one-acre lots beside five-acre lots were not in harmony with the community. He said that the state had suggested that counties avoid strip development as much as possible.

At the September 14, 1994, meeting, Commission Member Mrs. Cable stated that she agreed with Mrs. Grubbs that the subdivision would change the character of the community. She said that it was to the benefit of the owner and not the county, which concerned her. She said that the subdivision

would be in harmony with nothing in the community. She concluded that she would also recommend the denial.

At the conclusion of all discussion at its September 14, 1994, meeting, the Planning Commission voted three to one to pass the motion recommending denial of the application for conditional use permit. The application was then sent to the Board of Supervisors for its discussion.

The Plaintiffs' application for a conditional use permit for six one-acre lots for the purpose of adding six additional homes came before the Board of Supervisors of Warren County for purposes of a public hearing. At the public hearing, the Plaintiffs noted that the guidelines for the agricultural district called for the recognition of needs for agriculture, housing, and industry. Plaintiffs stated they did not understand how one-acre lots could be considered crowded when the County ordinance required a minimum lot size of one-acre to prevent crowding. Relative to public safety, the Plaintiffs pointed out that the Virginia Department of Transportation had approved the subdivision. Plaintiffs also noted that the subdivision had received Health Department approval.

At the Board of Supervisors meeting of October 18, 1994, the attorney representing the Shannon Woods Property Homeowners Association noted that property owners were concerned about safety because there were already 37 driveways on State Route 624, which was a dangerous road. The attorney noted that the original developer's, Senator Ball's, original plan for that property was for lots of 4.5 to 8 acres in size and that Shannon Woods Property Owners had been told that the property in the front would conform in terms of numbers of acres to their property. He stated that the Plaintiffs' application was in violation of that. Another concern was the potential of groundwater contamination due to the type of geology in that area. He noted that a 1991 Virginia Polytechnic Institute report stated that 33% of the tap water samples in Warren County significantly exceeded the level of nitrates safe for infants, and 49% of the wells tested positive for coliform bacteria. The attorney for the Shannon Woods Property Homeowners Association stated that the Plaintiffs only reason for the request for a conditional use permit was to make money, which did not justify their request.

At the October 18, 1994, Board of Supervisors meeting, Lester Cole, a property owner, stated that he was concerned with water runoff from the Plaintiffs' property onto his property. He felt that there would be no problem when central water and sewer was available.

At the October 18, 1994, hearing, Joanne Cole said that she was nearly struck and killed on State Route 624. She strongly felt that the lots should be five-acres in size. She was concerned with the ground water contamination and ground water quantity.

At the October 18, 1994, Board of Supervisors meeting, Betty Hoynoskie stated that she was concerned about her well water and the traffic situation in that area.

At the October 18, 1994, Board of Supervisors meeting, Wayne Chatfield-Taylor noted that he had been involved in an accident approximately 150 yards from the proposed area. He was opposed to six more driveways on that road and noted that it was already very narrow and dangerous and that motorists did not obey the speed limit. He stressed the need to preserve open space. At the conclusion of the October 18, 1994, public hearing, Supervisor Mrs. Thomson stated that the Board needed to pay attention to the County ordinances and that the Board needed to be consistent to maintain orderly growth in the County. She did not feel that the request was in keeping with the County zoning ordinance. She felt it would add to an already very dangerous road, and she was concerned with potential ground water contamination. She made a motion to deny the request.

At the October 18, 1994, Board of Supervisors meeting, the County Attorney inquired of the County Administrator if approval from the Virginia Department of Transportation was based on traffic engineering studies or on visibility or if it was based on driveway sight distances. The County Administrator stated that the Virginia Department of Transportation checked whether or not the driveway met VDOT minimum standards for sight distances.

At the October 18, 1994, Board of Supervisors meeting, Supervisor Mrs. Thomson also noted the proposed subdivision had the possibility of devaluing other properties in that area.

At the October 18, 1994, Board of Supervisors meeting, Supervisor Mr. Crowder did not feel that the Plaintiffs should be penalized because of previous strip development in that area. Mr. Crowder noted that there would be only three new entrances for six houses. Since it had received VDOT approval, Health Department approval, and met the Class B Subdivision guidelines, Mr. Crowder could not support the motion.

At the October 18, 1994, Board of Supervisors meeting, Supervisor Mr. Rudacille was in agreement with Supervisor Mr. Crowder. He preferred to have a service road constructed to accommodate the six houses.

At the October 18, 1994, Board of Supervisors meeting, Supervisor Mr. Miller stated he would support Supervisor Thomson's motion for the reasons she stated.

At the October 18, 1994, Board Supervisors meeting, there was a vote on the motion to deny the request which motion ended in a tie vote. Therefore the question was continued to the next Board of Supervisors meeting when all supervisors could be present.

At the meeting of the Board of Supervisors continued to November 1, 1994, the matter of the Plaintiffs' request for a conditional use permit was again taken up. Supervisor Dr. McNeill was present at the November 1 Board of Supervisors meeting; he had been absent from the previous meeting on October 18, 1994. At the November 1, 1994, meeting, Supervisor Dr. McNeill reported that he had visited the site, had listened to the tape of the public hearing of the Board of Supervisors meeting on October 18, and had talked with the applicant and the Shannon Woods Property Owners. Dr. McNeill noted that the Plaintiff had purchased the property approximately one year ago and subdivided it into four lots by right with three of the lots being one-acre in size. He was now before the Board of Supervisors to request a conditional use permit for a six-lot subdivision consisting of one-acre-plus lots. Dr. McNeill was concerned about having nine lots in a row, particularly the concentration of nine wells and nine septic fields in that one area. Dr. McNeill stated he could not support the request.

At the November 1, 1994, Board of Supervisors meeting, Supervisor Mrs. Thomson noted that the Shannon Woods Property Owners Association had invested substantially in their homes. They had purchased their property with the understanding that subsequent lots would be large lots. She felt that the proposed subdivision could devalue Shannon Woods properties. Mrs. Thomson felt the Board had an obligation to protect the welfare of the Shannon Woods property owners. She pointed out that the road was already dangerous. Mrs. Thomson was also concerned about having six more houses at that location since central water and sewer were not available in that area.

At the conclusion of the November 1, 1994, Board of Supervisors meeting, a motion was made to deny the request and it was approved by a three to two vote.

The Heater subdivision application complied with all of the technical requirements of the Warren County Subdivision Ordinance, except for the approval of the special use permit.

## II. *Conclusions of Law*

Virginia Code § 15.1-486 states that the governing body of any County may, by ordinance, classify the territory under its jurisdiction or any substantial portion thereof into zoning districts of such number, shape, and size as it may deem suited to carry out the statutorily permitted purposes. In each district it may regulate, restrict, permit, prohibit, and determine the following: "the use of land, building, structure, and other premises for agricultural, business, industrial, residential, and other specific uses. . . ." In this case, the property was zoned agricultural.

The purpose of zoning is "to promote the health, safety, morals, and general welfare of the community, to protect and conserve the value of buildings, and encourage the most appropriate use of the land." *City of Richmond v. Board of Supervisors*, 199 Va. 679, 686, 101 S.E.2d 641 (1958). "[T]he General Assembly of Virginia has undertaken to achieve in the enabling [zoning] legislation a delicate balance between the individual property rights of its citizens and the health, safety, and general welfare of the public as promoted by reasonable restrictions on those property rights." *Board of Supervisors v. Horne*, 216 Va. 113, 120, 215 S.E.2d 453 (1975). Under the Warren County Zoning Ordinance, a landowner in an agricultural district could subdivide his land into four lots of less than five acres each as a permitted accessory use, but a conditional use permit is required for subdivisions "of five or more lots, not to exceed fourteen lots, each lot containing less than five acres. . . ." Warren County Code § 180-21(D)(24), which is the class that the Heater Subdivision fits within. If the planned subdivision has more than fourteen lots which are less than five acres in size, then the landowner must apply for a rezoning.

In *Barrick v. Board of Supervisors*, 239 Va. 628, 630, 391 S.E.2d 318 (1990), the Supreme Court stated:

> When a local governing body passes a zoning ordinance, it is performing a legislative act, and as such, the ordinance carries a presumption of validity. A party seeking to invalidate a zoning or. rezoning ordinance, must initially produce probative evidence of unreasonableness, which, if accomplished, shifts the burden to the local governing body to produce sufficient evidence of reasonableness to render this issue fairly debatable. If the governing body carries that burden, the zoning ordinance will be sustained. *Ames v. Town of Painter*, 239 Va. 343, 348, 389 S.E.2d 702, 704

(1990); *Board of Supervisors v. Carper*, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959).

So long as the reasonableness of the zoning ordinance is fairly debatable, it will not be invalidated. *Board of Supervisors v. Horne*, 216 Va. 113, 119, 315 S.E.2d 453 (1975). "Local governing bodies, because of their knowledge of local conditions and needs of their individual communities, are allowed wide discretion in the enactment . . . of zoning ordinances. The Court should not substitute its judgment for that of the local legislative body unless there has been a clear abuse of power. *Byrum v. Orange County*, 217 Va. 37, 39, 225 S.E.2d 369 (1976). The Plaintiff did not prove that the Warren County zoning ordinance was unreasonable.

Warren County Code § 180-63(C) sets forth the general standards to be considered in issuing a conditional use permit, which are all designed to insure that the use "shall be in harmony with the general purpose and intent of the applicable zoning district regulations." Warren County Code § 180-21 states that: "This [agricultural] district is intended for areas where general agricultural pursuits are practiced, where low density residential developments may be situated without degrading the environment. . . ." A subdivision of the size planned by Heater required a special use permit, and among the factors to be considered were that "the proposed use shall be such that . . . vehicular traffic associated with such use will not be hazardous or in conflict with the existing and anticipated traffic in the area." Warren County Code § 180-63(D)(5). The Board shall also take into consideration "intent of the chapter . . . and prevent such use from changing the character and established pattern of development in the community." Warren County Code § 180-63(D)(6)(E).

The Board of Supervisors may provide certain uses, which it considers to have a potentially greater impact upon neighboring properties or the public than those uses permitted in the district as a matter of right to undergo the special exception process. Each site is to be examined by public officials, guided by standards set forth in the ordinance, for the impact the use will have if carried out on that site. *Board of Supervisors v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982). A zoning ordinance may include reasonable regulations and provisions for the granting of special exceptions or conditional use permits under suitable regulations and safeguards. Virginia Code § 15.1-491(C). This is expressly provided for by Warren County Code § 180-63(A)(1).

In *County Board of Arlington v. Bratic*, 237 Va. 221, 226-29, 377 S.E.2d 368 (1989), the Supreme Court reviewed the standards by which the Board of Supervisors' decision on an application for a conditional use permit is to be reviewed and stated:

> We do not read *Southland* to mean that a local governing body is stripped of all discretion in the issuance of a use permit merely upon a showing that the technical requirements of a zoning ordinance have been met. Indeed, in *Southland* we pointed out that the exercise of the power to grant or deny a use permit is "a legislative, rather than an administrative[,] act." *Id*. at 522, 297 S.E.2d at 722. . . .
>
> "The standards of judicial review applicable to zoning enactments also apply to actions taken by a local governing body on an application for a conditional use permit." *Harrell*, 236 Va. at 102, 372 S.E.2d at 141.
>
> "The standards of judicial review were summarized in a recent case closely analogous to the present situation. In *Fairfax County v. Jackson*, 221 Va. 328, 269 S.E.2d 381 (1980), the landowner applied for a rezoning from a residential classification requiring one-acre lots to another permitting half-acre lots so he could subdivide his 1.5-acre parcel into two building sites. The board of supervisors denied the application, and the circuit court reversed the board. We reversed the circuit court, saying the court had "usurped the legislative prerogative." *Id*. at 335, 269 S.E.2d at 386.
>
> In the course of our opinion, we said:
>
> "The Board's action denying Jackson's application was legislative action; it is presumed to be reasonable. The presumption is not conclusive; it stands until surmounted by evidence that the action of the legislative body was unreasonable. And the litigant attacking the legislative act has the burden to establish unreasonableness. *Loudoun County v. Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980)."
>
> " 'Legislative action is reasonable if the matter in issue is fairly debatable. *County of Fairfax v. Parker*, 186 Va. 675, 680, 44 S.E.2d 9, 12 (1947). An issue may be said to be fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. *Fairfax County v. Williams*, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975).' *Id*."

"We have established the following tests for determining whether the presumption of reasonableness should stand or fall. If the presumptive reasonableness of zoning action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the presumption is defeated by the evidence of unreasonableness and the legislative act cannot be sustained. *Fairfax County v. Snell Corp.*, 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974)." *Jackson*, 221 Va. at 333, 269 S.E.2d at 384-85. . . .

"We stated in *Jackson*: "The Board's evidence showed that the 1959 zoning . . . reflected the general one-acre lot size in the area at the time even though a number of the lots were smaller than one acre. Also, the Board offered expert testimony that approval of Jackson's application would set a precedent for other rezoning and ultimate resubdivision, and that if resubdivision of the approximately 40 additional [large] lots occurred, 'an adverse impact on the stable, established character of the . . . area' would result."

221 Va. at 331-32, 269 S.E.2d at 384. . . .

But, as noted previously, Bratic argues that it is unreasonable for a governing body to "deny a use permit application if it complies with . . . regulations even if a reasonable use is permitted by right." We answer this argument by paraphrasing the answer we gave to a similar argument in *Jackson*:

"That argument misses the point. The question is not merely whether the refusal to [grant a use permit] is unreasonable. Rather, the more precise inquiry is whether the landowner or the legislative body has the right to select the [use] when the [use permitted by right] and the proposed [use] are both reasonably [appropriate for] the subject property. To pose the question is to answer it."

"When, as here, the [use permitted by right] and the [proposed use] are both appropriate for the lot in question, a classic case of a "fairly debatable" issue is presented. *Under such circumstances, it is not the property owner, or the courts, but the legislative body which has the prerogative to choose the [appropriate use]." Jackson*, 221 Va. at 335, 269 S.E.2d at 386.

(Emphasis added.)

"A fairly debatable question is presented 'when the evidence offered in support of the opposing view would lead objective and reasonable persons to

reach different conclusions'." *City of Manassas v. Rosson*, 224 Va. 12, 17, 294 S.E.2d 799 (1982), appeal dismissed 459 U.S. 11, 66, 103 S. Ct. 809, 74 L. Ed. 2d 1009 (1983). The *Rosson* Court noted, "In making its decision in this type of case, a legislative body may consider the necessity of keeping residential areas free of disturbing noises, increased traffic, the hazard of moving and parked vehicles, and interference with quiet and open spaces for child-play." *Id.* at 19. In this case, the Board was very concerned about the increase in traffic on a rural road, the fundamental change wrought by a strip residential development along what was theretofore an open parcel of land in an agricultural district, and health concerns over the concentration of wells and septic systems.

The Warren County Zoning Ordinance has detailed provisions relating to the issuance of a conditional use permit. In addition to the specific standards set forth in the zoning ordinance, all such conditional uses shall satisfy the following general standards: (1) the proposed use at the specified location shall be in harmony with the adopted comprehensive plan; (2) the proposed use shall be in harmony with the general purpose and intent of the applicable zoning district regulations; (3) the proposed use shall be such that it will be harmonious with and will not adversely affect the use or development of neighboring properties in accordance with the applicable zoning district regulations and the adopted comprehensive plan; (4) the proposed use shall be such that pedestrian and vehicular traffic associated with such use will not be hazardous or in conflict with the existing and anticipated traffic in the area; (5) adequate utility, draining, parking, loading and other necessary facilities to serve the proposed use shall be provided; (6) in determining whether or not to grant this permit and in determining conditions to be imposed, the governing body shall take into consideration the objective intent of the Warren County Zoning Ordinance. Warren County Code § 180-63(B). These factors were appropriately considered by the Board in making its decision to deny the conditional use permit.

The Board of Supervisors is in a unique position to determine whether or not the proposed use is in harmony with the general purpose and intent of the applicable zoning district regulations. The Board of Supervisors is the appropriate body to determine whether the proposed use would be harmonious with and would not adversely affect the use or development of neighboring properties in accordance with the applicable zoning district regulations and the adopted comprehensive plan.

The fact that the applicant obtained Virginia Department of Transportation approval in that the driveway entrances sought onto State Route 624 met Virginia Department of Transportation's minimum standards for sight distances does not preclude the Board of Supervisors from exercising its legislative judgment in determining that the proposed use will be hazardous or in conflict with the existing and anticipated traffic in the area. The Board of Supervisors heard extensive public input at its public hearings that the traffic that would result from the proposed use would add to an already dangerous situation caused by too many cars and too many driveway entrances on an already narrow and dangerous stretch of road. The Board of Supervisors further had the benefit of the Planning Commission's recommendations and the input that the Planning Commission had in making its determination. Virginia's State Code specifically provides that the Planning Commission members are to be qualified for their position by knowledge and experience to make decisions on questions of community growth and development. See Virginia Code § 15.1-437.

Whether the proposed conditional use in this case could be consistent with good zoning practices and would be consistent with the health, safety, and welfare of the county residents is a fairly debatable question based on the information that was available to the Board of Supervisors, and this Court is not permitted to substitute its judgment for the legislative judgment exercised by the Board of Supervisors. The evidence and factors which the Warren County Board of Supervisors considered in denying the conditional use permit for the additional lots in the Heater subdivision were appropriate and rendered the decision fairly debatable. The Board considered traffic conditions, septic and well concerns, and the general character of the neighborhood in making their decision to deny the application for a conditional use permit for the additional Heater subdivision lot, and their decision was not arbitrary and capricious, nor was it the result of citizen pressure. Therefore, the action of the Warren County Board of Supervisors is affirmed, and the request of the Plaintiffs is denied.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Board of Supervisors' decision in denying the Heater conditional use permit for the proposed subdivision is affirmed, and the Bill of Complaint is dismissed.