Present:  All the Justices

CITY COUNCIL OF THE
CITY OF SALEM
                                    OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 951493                      June 7, 1996

WENDY'S OF WESTERN VIRGINIA,
INC., ET AL.

                FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                         Roy B. Willett, Judge

     In this land use controversy, we consider whether the trial court
erred in ruling that a local governing body's denial of a rezoning
petition was arbitrary and capricious.

     The pertinent facts are undisputed.  The subject property is
1.048 acres of land in the City of Salem presently carrying a R-2
(single family, residential) zoning classification.  The property is
situated at the northeast corner of the intersection of Route 419
(Electric Road), a north-south, multi-lane street divided by a median,
and Midland Road, a two-lane, east-west street.

     The property is comprised of two parcels, each improved with
single-family dwellings, 1139 Highland Road and 1133 Highland Road,
respectively.  Highland Road is a north-south residential street
parallel to Route 419 intersecting Midland Road at a point
approximately 300 feet east of Route 419.

     Access to the subject property is from Midland Road to 1139 and
from Highland Road to 1133.  The property slopes from Highland Road
"as it goes from east to west" toward Route 419 so that "when it gets
to 419 it's from 12 to 15 feet below grade."  There is no access to
the property from Route 419.

     In June 1994, appellee Wendy's of Western Virginia, Inc., filed

with the City of Salem a petition seeking rezoning of the property for use as a restaurant. Asserting it has an option to purchase the property from the owner, appellee Gary Andrew Wilson, Wendy's sought a change to a B-3 (business) classification.

Following a public hearing, the City's planning commission recommended approval of Wendy's request by a 3-2 vote. Subsequently, following another public hearing, Salem's city council unanimously denied the request.

In August 1994, Wendy's and Wilson (collectively, the owner) filed the present motion for a declaratory judgment against appellant City Council of the City of Salem (the City) seeking a declaration that the City's action was invalid. The owner asserted the City's denial was arbitrary, capricious, and unlawful because the existing R-2 zoning designation for the property is an unreasonable classification and the proposed B-3 classification is reasonable. Further, the owner asserted there is no valid basis in law for denial of the rezoning request, the proposed use complies with the City's long range land use plan, and the proposed use is consistent with other rezonings in the area in recent years. Generally denying the allegations, the City responded that the owner is not entitled to the relief sought.

Following an ore tenus hearing at which the litigants presented testimonial and documentary evidence, the trial court ruled in favor of the owner. In a May 1995 final order, the court declared the City's denial of the rezoning petition "arbitrary and capricious in

that the evidence presented established that the existing R-2 zoning is unreasonable and that the proposed zoning to B-3 is reasonable . . . and that there was no land use reason to deny the rezoning request."  We awarded the City this appeal.

Initially, we shall review the applicable principles of law.  The action of city council denying the owner's petition was legislative action, presumed to be reasonable.  The presumption, while not conclusive, stands until surmounted by evidence that the legislative action was unreasonable.  The litigant attacking the legislative act has the burden to establish unreasonableness.  Board of Supervisors of Fairfax County v. Pyles, 224 Va. 629, 637, 300 S.E.2d 79, 84 (1983).

Legislative action is reasonable if the matter in issue is fairly debatable.  An issue is fairly debatable if, when measured by quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions.  Id. at 637-38, 300 S.E.2d at 84.

The following test is employed to determine whether the presumption of reasonableness should stand or fail.  "If the presumptive reasonableness of zoning action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness.  If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the presumption is defeated by the evidence of unreasonableness and the legislative act cannot be sustained."  Board of Supervisors of Fairfax County v. Jackson, 221 Va. 328, 333, 269

S.E.2d 381, 385 (1980) (citing Board of Supervisors of Fairfax County v. Snell Constr. Corp., 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974)).

Upon appellate review of a trial court's ruling that the refusal of a rezoning request was arbitrary and capricious, we accord the court's finding, as in other cases, a presumption of correctness. But we also give full credit to the presumption of validity of the challenged legislative action and then, meshing the presumptions, we examine the record to determine whether the evidence sustains the court's finding. Pyles, 224 Va. at 638, 300 S.E.2d at 84.

The dispositive question in the present appeal is whether the reasonableness of the existing zoning on the subject property is fairly debatable. We hold that it is, and reverse.

We will assume the owner presented probative evidence of the reasonableness of the proposed B-3 zoning and of the unreasonableness of the existing R-2 zoning. The property, used for years as rental property, is located in a 40-acre residential subdivision known as Fairfield. The subdivision, north of Midland Road along Highland Road and Easton Road, farther to the east, consists of 37 single-family dwellings and one apartment complex. All the residential dwelling parcels are zoned R-2, but the City's Comprehensive Plan, adopted in 1993, on its Future Land Use map, calls for the residential area on Highland and Easton Roads to become industrial.

The owner presented evidence of the considerable commercial and industrial development in the area surrounding Fairfield beginning in 1985 and continuing to the present time. Since 1989, no one has

expressed interest in buying the subject property for residential purposes, although several parties have considered purchasing it for commercial uses.  The City recently widened Midland Road within the right of way so that the travelled portion is 10-12 feet from the side of the dwelling at 1139 Highland Road.  A former lessee testified about the noise and vibration created there by trucks travelling on Midland Road to and from a large, nearby industrial park established by the City east of Fairfield.  Wilson, the fee owner of the subject property, opined that "the best use for the property is commercial because this entire area has just become dormant."

The owner also presented evidence showing the various commercial and industrial uses existing at, as well as in the vicinity of, the Route 419-Midland Road intersection, which is controlled by traffic signals.  On the southeast quadrant of the intersection is a bank branch office.  On the southwest quadrant is a motor vehicle parts retail store and warehouse.  On the northwest quadrant is a restaurant.

In the vicinity of the intersection to the southeast is located the Intervale Industrial Park, with "large industrial uses."  Some distance to the northwest from the intersection is a tire plant. Farther north of the intersection on the west side of Route 419 is an equipment maintenance and sales facility.  Almost directly across from that facility on the east side of Route 419 in Fairfield is an office building, which "backs up to the homes" on Highland Road.  Farther north of the office building on the east side of Route 419 is a

convenience market and gasoline service station situated within 50 to 60 feet of a residential dwelling on Highland Road.

Through testimony of an expert witness in planning and zoning, the owner showed that the subject property "is not suitable for residential use." Elaborating, the expert said the Highland Road neighborhood "has been stressed by outside development taking place on its periphery." He testified the "area is caught between two competing uses, industrial and commercial" that "will make it unattractive for residential use." The expert concluded that the owner's proposed use would be "an appropriate use of that property if the property were vacant."

Responding to the owner's evidence of unreasonableness, the City offered evidence that the existing zoning classification is reasonable. This evidence principally came from two expert witnesses, one being the City's director of planning and development.

The City showed that the single-family dwellings on Highland and Easton Roads comprise "a viable residential community." One expert said that "it's old, it's beautiful, tree lined, well kept, nice, it's quiet, it seems like a little secret pocket of residential that very few people know about." The other expert described the area:

> "The housing stock is quite traditional for the 1950s to early sixties time frame, there are mature trees on site, the integrity of the housing stock is good, the appearance of the yards is good, the sense and feel that one gets when traveling by car, the sense that one gets and feels when standing along Highland Road after you turn off Midland and only going just a lot or two is that one is in a residential area.

> "The area does not appear to be suffering from any stress relative to dilapidated housing, does not appear to

be suffering from a preponderance of for sale or rent signs. There does not appear to be a lack of pride in the home ownership, the properties are improved by way of painting and appearance, again all indications it strikes me . . . that this is a residential area of some standing in terms of length of time, and an area that has obviously maintained its integrity in both appearance and value."

More than 34 residents of the area signed a petition against rezoning the subject property, a majority having lived there for over 15 years with eight having lived there for over 40 years. Disputing the owner's evidence that the residential area is "stressed," one expert pointed out that the "houses are all occupied, they have always been occupied, they sell, they sell for higher than they are appraised, [and] the property values have continued to go up despite 419." The dwellings on the subject property currently produce monthly rentals of $485.00 and $495.00, with the owner receiving more rent in 1995 than was received in 1994 on 1139 Highland Road.

The City's evidence showed that many of the commercial uses in the vicinity of the subject property are under a "RB" zoning classification, "the least intensive type commercial use." Noting that the City is "out of land" that can be developed for industrial use, the City's director of planning and development stated that "eventually," but not "at this very moment," the Fairfield area will become "an industrial area, not a commercial area." This fact is recognized in the City's comprehensive plan, the witness pointed out. He also opined that any transition from residential to industrial uses should be accomplished by a rezoning directly from R-2 to an industrial classification rather than "going through a commercial type

development" by rezoning the area "one piece at a time."

The City's experts both opined that the present R-2 zoning is reasonable. The rezoning request is not conditional and, according to the evidence, if the request is granted any other B-3 use "as set forth in the zoning ordinance could go there." Thus, the experts predicted, if the subject property is rezoned B-3 "to be converted to Wendy's, a drive thru, fast-food establishment, . . . it would put an inordinate pressure on the adjoining properties along Highland and . . . could lead to a domino-type effect or a mushroom effect whereby there would be other requests to go commercial," which would be "very difficult to deny." Such a result would interfere with the City's "enviable" practice of "piecing together industrial properties" and developing them as a unit.

The foregoing recitation of the pertinent facts points plainly to the disposition of this appeal. Clearly, the owner's challenge to the City's legislative action has been met by evidence of reasonableness of the existing zoning sufficient to make the issue fairly debatable. In denying the rezoning request, the City properly endeavored to protect an existing, established, and stable residential neighborhood. In addition, the City elected to adhere to the standards of its comprehensive plan, a matter within the council's discretion. See Board of Supervisors of Loudoun County v. Lerner, 221 Va. 30, 37, 267 S.E.2d 100, 104 (1980).

In our view, the evidence fails to support the trial court's ruling. On the contrary, we are of opinion that the evidence offered

in support of the parties' opposing views would lead objective and reasonable persons to reach different conclusions. Thus, we conclude that the City's legislative action in denying the rezoning petition was reasonable, not arbitrary and capricious.

Furthermore, it will be remembered we have assumed the proposed B-3 zoning to be reasonable. But when, as here, the existing zoning and the proposed zoning are both appropriate for the property in question, the legislative body has the prerogative to choose the applicable classification, not the property owner or the courts. Jackson, 221 Va. at 335, 269 S.E.2d at 386. Accord County Bd. of Arlington County v. Bratic, 237 Va. 221, 229, 377 S.E.2d 368, 372 (1989).

It thus follows that the trial court usurped the legislative prerogative in annulling the Salem city council's action. Accordingly, the judgment of the trial court will be reversed, and final judgment will be entered here dismissing the motion for a declaratory judgment.

Reversed and final judgment.