# CIRCUIT COURT OF ROCKINGHAM COUNTY

Clifford L. Custer,
Daisy L. Custer,
and William B. Holtzman

v.

City of Harrisonburg
City Council

January 28, 1998

Case No. (Chancery) 16377

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court on Complainants' Bill of Complaint for a declaratory judgment under § 8.01-184, *et seq.*, of the Code of Virginia, 1950, as amended, for determination that the refusal of the City Council of the City of Harrisonburg to rezone a 1.053 acre parcel of land from R-1 (single family residence) to B-2 (general business) is unreasonable and arbitrary and capricious. This is the fifth unsuccessful rezoning application for this precise parcel of land that has been filed since 1969. Three of the four previous applications were denied, and one was withdrawn. The last time an attempt was made to obtain a similar rezoning for this parcel of land in 1989, the denial of the City Council was appealed to the Circuit Court of Rockingham County which affirmed the City Council's decision. (*Custer v. City Council of the City of Harrisonburg*, Docket No. 12578 (May 18, 1990) (Graves, Judge).)

*Factual Background*

This 1.053 acre plat of land was originally located in the northeast corner of a large tract of land lying west of Interstate 81 and south of Port Republic Road comprising a large residential neighborhood consisting of sin-

gle family residences. Through increased development over time and the growth of James Madison University, the subject property has taken on a singular, insular character. The east side of the property is bounded by the Interstate 81 right-of-way. Although Interstate 81 is currently a four-lane divided interstate highway, it is undisputed that there are plans sometime in the near future to expand this section of I-81 to six lanes. Although there is no evidence that the expansion of I-81 will take any of the land involved in this dispute, it will certainly put an even more intensively developed interstate highway as the eastern boundary of this property. In addition, the northern boundary of the property which is Port Republic Road has had a dramatic increase in traffic over the years, and, approximately three or four years ago, the section of Port Republic Road fronting on the property and extending west to Main Street was expanded to a four-lane thoroughfare (with five lanes immediately in front of the subject property). Although the land immediately to the south of the subject property is zoned R-1, some years ago it was purchased by James Madison University (JMU) and because, as a state entity, JMU is not bound by the zoning regulations, they have constructed on this approximate seven-acre parcel a student parking lot which has approximately 300 to 400 parking spaces and contains industrial type lighting in the interior of the parking lot for the purposes of the safety of the individuals using the parking lot. The north side of Port Republic Road immediately across from the subject property is one of the main entrances to James Madison University and is occupied by campus-like buildings, and, in addition, a public television studio and broadcasting tower.

The Court heard extensive testimony from the parties and from a number of experts concerning the suitability of the subject property for R-1 uses. The thrust of the testimony from the Complainants' witnesses was that the subject property has been cut off from the surrounding residential neighborhood because of topography, the JMU parking lot, I-81, and Port Republic Road so that it effectively has been isolated from the balance of the R-1 property which constituted the original integrated neighborhood. A view of the property confirms that this particular parcel of land is located in such a fashion that it is hard to conceive of it as being part of the greater neighborhood which constitutes the residential area west of I-81 and south of Port Republic Road. In fact, the only physical connection that the subject property has with the surrounding neighborhood is that across Hillside Road on the west side of the property, there is another vacant lot which is also zoned R-1. The subject property and the neighboring vacant lot topographically lie in a pronounced depression from the balance of the residen-

tial neighborhood and do not appear to be an integral part thereof. Frankly, when the property is viewed, it appears to be an isolated island that has been left behind through the continuing expansion of the surrounding highway system and JMU's extensive parking facility.

The disputes concerning the appropriate usages for this land have been going on for a considerable period of time. The first attempt to rezone the land from R-1 to B-2 was made in 1969 and was rejected on a 5 to 0 vote. A second attempt was made in 1974 to rezone the land from R-1 to R-3, but this application for rezoning was withdrawn before any action was taken thereon. In 1982, Boddie-Noell Enterprises (a franchisor of Hardee's Restaurants) applied to have the property rezoned from R-1 to B-2. At that time, the Planning Commission voted 4 to 1 in favor of the rezoning, but the City Council unanimously rejected the rezoning application in June of 1983. In 1989, the Complainants in the instant case, Mr. and Mrs. Custer, filed an application to rezone the property from R-1 to B-2. This was denied 5 to 0 by the Planning Commission and was similarly rejected by the City Council. The Custers appealed that decision to the Circuit Court of Rockingham County, which upheld the actions of the City Council.

Another aspect of the property is that the portion of Port Republic Road lying immediately to the north of this parcel has been described as the City's second most congested and heavily traveled intersection. The intersection is something of a logistical quagmire in that in front of the subject property and immediately to the east, there are no less than seven separate sets of traffic signal controls consisting of no less than fourteen separate traffic lights which are grouped in a relatively confined linear space to handle traffic running east and west on Port Republic Road and a north and a south off-ramp for I-81 and the north-south traffic on Hillside Avenue and Bluestone Avenue.

The City of Harrisonburg's Public Works Director, Mr. James Baker, testified that through frequent observation of this intersection in the course of maintaining the City's streets and highways, he has come to recognize it as one of the single biggest traffic problems in the Harrisonburg area and that it is a constant concern on the part of the city government and VDOT officials to make certain that the traffic at this intersection is maintained in as safe a manner as possible. One of the reasons that this task is complicated in this amalgamation of intersections is that the traffic control signals need to be programmed to assure that the fairly short off-ramps of I-81 do not back up and cause a traffic hazard on the high speed interstate. In order to prevent an off-ramp backup, the lights need to be programmed so as to give precedence to the I-81 off-ramp traffic as a matter of vehicular safety.

Thus, the Port Republic Road series of traffic lights are subservient (or programmed to yield) to the traffic demands of I-81.

Under the City of Harrisonburg's Zoning Ordinance, R-1 zoning permits property to be used for owner-occupied single family dwellings and churches, public and private schools, governmental parks and playgrounds, and other public uses. The R-2 residential district zoning is intended for and permits medium density single family and two-family residential developments, and the R-3 zoning is used for medium to high density residential development and other uses intended to respect the residential character of the neighborhood and includes attached multi-family buildings, college and university buildings, and professional offices. The B-2 general business district zoning, which has been requested in this case, is a general business category which provides for a wide variety of retail shopping, commercial and automotive and miscellaneous recreational activities, including but not limited to retail merchants, gas stations, hotels, motels, theaters, bus terminals, automobile or truck sales, etc.

In this proceeding, the Complainants, when applying for a rezoning application, made a number of proffers by which they would limit the rezoned property to be utilized as a service station, convenience store, and car wash with related auxiliary buildings. However, no proffers were made concerning the hours of operation, the lighting, or the signage that would be utilized on the property. The draft site plans which were provided by the applicant showed a tastefully designed convenience store and a twelve-pump gas station, together with a car wash attached to the convenience store.

The Complainants provided in their case the testimony of Mr. William Holtzman, the president of the Holtzman Oil Company, who is the contract purchaser of the property, and he described the general nature of the facility that he intended to locate on the property if zoning could be obtained. As his testimony indicates, he desires his gas station and convenience store to be located by the exit ramps of the interstate in order to draw traffic off of the interstate into the proposed facility. In addition, of course, the store and gas station would rely upon traffic which would already be generated by the James Madison University campus and also the east and westbound traffic on Port Republic Road to provide additional customers for his facility.

Complainants produced four expert witnesses. Two of them were qualified as experts in the area of land planning, land usage, and zoning applications, and one was qualified as a real estate expert and one as a traffic control expert. Three of the experts testified, in essence, that the

subject property had ceased to be part of the neighboring R-1 community because of its being bounded by I-81, Port Republic Road, and the seven-acre parking lot that James Madison University has installed on the south side of the property line. The testimony of these experts was that it is illogical, unreasonable, and unrealistic to regard the subject property as being suitable for R-1 development and that the Comprehensive Plan of the City, which classifies all land in this area lying west of I-81 as either R-1, R-2, or R-3 is not served by continuing the classification of this isolated parcel of land in an R-1 category. Although the experts testified that the property was wholly unsuitable for single family dwellings and that they could not perceive of anyone desiring to build or building a home on such property, their testimony as to the other permitted uses in R-1 was slightly less emphatic. They conceded that in R-1, a church or a school, for example, could be put on the property, but their testimony was that because of the zoning ordinance requirements of fifty-foot setbacks when a school or church is built on the property, that it in all likelihood would be highly unattractive to virtually any users for those purposes because it would have such a confined space in which to erect a building, and the amount of parking available would severely limit the parcel's use for a church or school.

The Complainants also introduced testimony from a traffic consultant who had examined in detail the supposed effect that the proposed facility would have upon the traffic on Port Republic Road. In essence, the traffic consultant conceded that the proposed convenience store/gas station which is to be located on the subject property would result in approximately 1750 trips in and out of the facility in each twenty-four hour period. He further indicated that the amount of traffic proceeding west on Port Republic Road which would take a left into Hillside Avenue to enter the facility would increase approximately fivefold. His testimony was that the increases in the amount of congestion at the location of the proposed facility would be minimal, and although it would cause additional delays at these intersections, such delays should be well within the bounds considered acceptable by traffic management criteria.

Notably, the two land planning experts, who testified concerning the alleged unreasonableness of the zoning of this parcel of land as R-1, were never asked and specifically disclaimed having had made any examination of whether there were one or more alternate proposed uses of the land which would present far less of a traffic impact on Port Republic Road. Both experts claimed that they had not looked at that question and had confined themselves solely and exclusively to offering an opinion on

whether the B-2 classification as a convenience store/service station would be reasonable.

Another expert produced by the Complainants was Mr. J. Kenneth Kline of Kline Realty in Harrisonburg, who was qualified as an expert in real estate and real estate marketing in the surrounding area. Mr. Kline indicated that in his judgment, the property was clearly not suitable for single family residence purposes and could not be sold as such. Interestingly, however, Mr. Kline said that approximately a year or two ago a local physician had offered the Custers $150,000.00 to purchase the land (presumably to be rezoned to R-3) in order to erect a professional office on the property. According to Mr. Kline, this offer was summarily rejected by the Custers on the grounds that the price was too low. In comparison, the price being offered by Mr. Holtzman, the contract purchaser in this case, is a price of $220,000.00, assuming that the appropriate rezoning can be obtained. Mr. Kline felt that under the current circumstances, if the property had to be sold solely and exclusively for single family residences, he doubted the entire 1.053 acres could bring much more than $20,000.00 to $25,000.00 for those purposes (assuming one could find someone to buy the property for use as a single family residence).

The City presented its evidence through Carolyn E. Noel, the Senior City Planner for the City of Harrisonburg, who had responsibility of preparing a staff analysis of the request for rezoning; Mr. Jim Baker, the City's Director of Public Works; and Stacey Hoffman Turner, the City's Director of Planning and Community Development.

Essentially, all three of the City's witnesses indicated that the comprehensive plan of the City calls for the land located immediately to the west of I-81 to be developed as residential property all the way from Purcell Park (which lies to the south of the subject property) up to and through the Reherd Acres area which lies approximately three miles north of the subject property along the I-81 corridor. The City's witnesses testified that the immediate vicinity and neighborhood surrounding the subject property is a community of single family residences that are approximately forty to fifty years old and with the only exception being the JMU parking lot and the subject property and the vacant lot immediately next to it. More importantly, the essential thrust of the staff's opposition to this rezoning application and the City's defense of its actions in this case relies upon the fact that even if one were to assume that the subject property could not be continued or should not be continued as an R-1 zone, there are numerous other reclassifications and rezonings that could be applied to the land which would be far less disruptive to the neighboring community and would put

far less pressure upon the traffic patterns flowing over Port Republic Road than would be generated by a twelve pump service station/convenience store/car wash.

Although the traffic expert called by the Complainants would not go so far as to say that the Complainants' proposed use of the property was the most traffic-intensive use that could be made of the property, it is clear from the evidence presented, and the Court finds that the location of a large gas station/convenience store/car wash on the property is one of the most traffic-intensive applications that could be made of the land. With the possible exception of fast food restaurants, it is difficult to conceive of any type of business that would generate as much traffic as the business that has been proposed for this location by the Complainants. Although the expert's traffic report was a well-thought-out document, neither the Court nor the City Council is bound by the expert's conclusions. *See e.g., Moulden v. Frederick County Board of Supervisors*, 10 Va. Cir. 307 (1987) (Woltz, J.).

The City argues, for example, that the property could be reclassified to an R-3 classification which would permit some form of multi-unit housing to be located there which presumably could be built for use by students at James Madison University which is located immediately across the street, or the property could be used for professional offices which would have far less of an adverse impact upon the surrounding community. These uses would not only generate substantially less vehicular traffic than that proposed by the Complainants' proposal, but they also would not involve signage or lighting approaching anything of the size or prominence as that used by gas stations located off an interstate. In fact, the offer of a local physician approximately two years ago to buy the property for $150,000.00 is concrete evidence that there is and would be a significant demand for the property for uses other than as a B-2 intensive commercial application.

### Legal Analysis

The law governing the challenge by an unsuccessful applicant for the rezoning of property has now become well established in the Commonwealth. The most recent exposition of the Supreme Court on the issue is found in *City Council of Salem v. Wendy's*, 252 Va. 12 (1996), where it is stated:

> Initially, we shall review the applicable principles of law. The action of city council denying the owner's petition was legislative action, presumed to be reasonable. The presumption, while not

conclusive, stands until surmounted by evidence that the legislative action was unreasonable. The litigant attacking the legislative act has the burden to establish unreasonableness. *Board of Supervisors of Fairfax County v. Pyles*, 224 Va. 629, 637, 300 S.E.2d 79, 84 (1983).

Legislative action is reasonable if the matter in issue is fairly debatable. An issue is fairly debatable if, when measured by quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. *Id.* at 637-38, 300 S.E.2d at 84.

The following test is employed to determine whether the presumption of reasonableness should stand or fail. "If the presumptive reasonableness of zoning action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the presumption is defeated by the evidence of unreasonableness and the legislative act cannot be sustained." *Board of Supervisors of Fairfax County v. Jackson*, 221 Va. 328, 333, 269 S.E.2d 381, 385 (1980) (citing *Board of Supervisors of Fairfax County v. Snell Constr. Corp.*, 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974)).

*Id.* at 14-15.

Although not discussed at any length in the decided cases, a challenge to the validity of existing zoning on a particular piece of land is not something that is done in the abstract but is only done when there is a case or controversy generated by an unsuccessful application to rezone the property. Therefore, the critical issue presented in this case is not solely whether the R-1 zoning for the subject property is "reasonable," but the more appropriate question is whether the governing body's refusal to rezone the property as requested by the unsuccessful applicant was unreasonable and therefore arbitrary and capricious. This distinction is important in this case.

The request for rezoning made by the Complainants in this case was to rezone the property from the lowest density and clearly most residential use to essentially the highest level of commercial development allowed under the City's zoning ordinance. Counsel for both parties agree that the appropriate analysis is to determine whether the Complainants have made a prima facie case that the current zoning is unreasonable *and* that the pro-

posed zoning is reasonable. If this burden is met, the Defendant must put on evidence showing that the governing body's actions and positions were "fairly debatable."

The facts prove that at this point in time, the overwhelming weight of the evidence has indicated that the current R-1 zoning for this particular parcel of land is clearly unreasonable. Even the City's Director of Planning had to concede that it was fairly incomprehensible that anybody would ever buy or even develop this land for the purposes of erecting a single family residence. It is highly unlikely that any individual would ever want to locate a single family residence literally in the middle of the conjunction of what is to be a six-lane interstate highway (I-81) and a four-lane heavily traveled city thoroughfare (Port Republic Road). Although the City has put on evidence that numerous homes are located as close as this property is to the interstate, they have shown no piece of property on which a single family residence has been built which essentially is an island sitting in the middle of a massive confluence of major highways. The Court finds that the Complainants have come forth with significant evidence challenging the reasonableness of an R-1 classification for the subject piece of property. The question now becomes whether the City has responded with sufficient evidence of reasonableness in order to make the dispute "fairly debatable" and thus bring it within the presumption of the correctness of legislative action by the City Council.

This Court finds that the City has come forward with abundant evidence to prove that the request to rezone this property to B-2, even when restricted by the proffers that were made to limit the construction on the property to a twelve-pump gas station/convenience store/car wash is unreasonable. The overwhelming evidence is that the proposed use of this property is one of the most highly traffic intensive uses to which the property could be put. According to the testimony of the City's witnesses, the proposed use would present an unreasonable burden upon the already highly-congested intersections of Port Republic Road and I-81 and would, because of the hours of operation (24 hours) and the signage and the extensive lighting required by such a use, be an intrusion upon the surrounding residential neighborhood and entirely inconsistent with the pattern of development that has been permitted to occur on the west side of I-81. The City has shown that there are many uses for the property with zoning reclassification less intensive which would be proper for this parcel of land when all of the circumstances are considered. For example, as has been previously stated, there is evidence that the property could be used for professional offices or multi-unit family dwellings to supply student housing for JMU.

Although the property would have to be rezoned to R-3 for these uses, it is indisputable from the evidence that such uses would present far less of a traffic burden than is presented by the proposed convenience store/gas station/car wash and would be far more in keeping with the residential character of the neighborhoods (with the exception of the JMU campus) which run along the entire relevant portion of the west side of the I-81 corridor.

In short, the City of Harrisonburg has shown by ample evidence that its refusal to rezone the property to a B-2 classification is "fairly debatable," and therefore, its legislative action in refusing to rezone the property as requested carries a presumption of validity.

Therefore, the Complainants' Bill of Complaint to declare the denial of its application for rezoning request to be arbitrary and capricious and thus void is hereby denied.

The Clerk shall certify a copy of this Opinion and Order to M. Steven Weaver, Esq., counsel for the Complainants, and to Holmes C. Harrison, Esq., counsel for the Defendant.