Present: All the Justices

JAMES E. GREGORY, SR., ET AL.

v.  Record No. 981184    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        April 16, 1999
THE BOARD OF SUPERVISORS
OF CHESTERFIELD COUNTY


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge


In this appeal, we consider whether the trial court erred in upholding a decision by the Board of Supervisors of Chesterfield County (the Board) denying an application for rezoning that included proffers of monetary conditions substantially lower in amount than those recommended by the County.

James E. Gregory, Sr., and Mary C. Gregory own a 30-acre parcel of land with frontage on Newbys Bridge Road in Chesterfield County (the property). The Gregorys have lived on the property since purchasing it in 1955. In March 1994, the Gregorys entered into a contract to sell the property to Oscar H. Harriss.

Harriss filed an application with Chesterfield County (the County) in March 1994, requesting that the zoning classification of the property be changed from "Agricultural A" to "Single-Family Residential R-9." Harriss later amended the application to request that the property be rezoned to "Single-Family

Residential R-12" (the final application). In the final application, Harriss proposed a residential subdivision of 81 lots, with a density of about 2.7 dwelling units per acre.

In his original application to rezone the property to an R-9 designation, which would have permitted a maximum of 95 lots, Harriss proffered cash payments to the County in the amount of $5,043 per lot for "infrastructure improvements." In the final application, Harriss proffered cash payments of $1,500 per lot. In both applications, Harriss made additional proffers, which included the dedication of an easement to permit the widening of Newbys Bridge Road and the construction of off-site improvements designed to minimize the development's impact on the surrounding area.

While Harriss' applications were pending, the County had in effect a written policy concerning cash proffers. The policy set out a methodology for calculating the cost to the County of providing public facilities for each new residence in a proposed subdivision, including schools, roads, parks, libraries, and fire stations. In 1995, based on calculations made using this methodology, the policy provided that "residential rezoning applicants are being asked to proffer $5,083 per lot."

After reviewing Harriss' final application, the County's planning staff (the staff) recommended approval of the application "subject to the applicant addressing the impact on

2

capital facilities and the transportation network, consistent with the Board's policy."  The staff noted that the proposed rezoning and land use conformed to the County's comprehensive plan, which designated the property for residential use with a density of 1.51 to 4.0 units per acre.  However, the staff concluded that the proposal "fail[ed] to adequately address concerns relative to impacts on the transportation network and capital facilities."

In its report, the staff estimated that the proposed 81-lot development would result in the addition of about 227 new residents, including an estimated 47 school-age children.  The staff also estimated that the new residences would generate about 850 additional daily vehicle trips, primarily along Newbys Bridge Road.  The staff concluded that traffic generated from the proposed development, along with other traffic using the new subdivision roads as "cut through" routes, would "increase traffic volumes on the adjacent subdivision streets beyond the acceptable level."  The staff estimated that the "fiscal impact" on the County's capital facilities resulting from Harriss' proposed subdivision of 81 dwelling units would be $5,156 per unit.

The Chesterfield County Planning Commission (the Commission) considered Harriss' applications to rezone the property at meetings held in June and November 1994.  The

Commission recommended denial of the final application, citing concerns regarding the impact that the rezoning would have on traffic, drainage, schools, and fire and rescue service.

The Board considered Harriss' final application at a public hearing in January 1995. During the hearing, 16 citizens spoke in opposition to the application, while one citizen spoke in favor of it. Many of these area residents cited the inability of Newbys Bridge Road to accommodate additional traffic. They emphasized that the road had dangerous curves, flooding problems, narrow sections preventing school buses from passing each other in opposite directions, a lack of shoulders, drainage ditches located close to the edge of the pavement, and a very high volume of traffic using the road. Several of these citizens also expressed concern regarding the impact that the proposed development would have on area schools, particularly on the elementary school that would serve children in the proposed subdivision. The principal of that elementary school stated that the school's enrollment already exceeded planned capacity by 121 students.

William Poole, Assistant Director of Planning for the County, stated at the hearing that the proposed rezoning of the property to R-12 was "consistent with the County's adopted Land Use Plan." Poole noted that the predominant zoning classification in the general area of the property was single-

4

family residential, but that most of the land immediately adjacent to the subject property was zoned for agricultural use. Poole recommended that the application be approved only if the Board was satisfied that the application adequately addressed the fiscal impact of the proposed development on transportation, schools, drainage, and other residential development in the area. The Board voted to deny the application.

The Gregorys and Harriss (collectively, Harriss) filed a motion for declaratory judgment in the Circuit Court of Chesterfield County, seeking a declaration that the Board's denial of the rezoning application was, among other things, unlawful, arbitrary, and unreasonable. At a bench trial, Thomas E. Jacobson, the County's Director of Planning, testified that the County's planning staff had reviewed the initial versions of Harriss' application and had recommended approval of them. However, after reviewing the final application, the staff recommended approval only if the Board determined that the County's "capital needs" would be met. Jacobson acknowledged that the only significant difference between the final application and the previous versions, other than reducing the maximum number of lots from the original proposal of 95 to 81, was the decrease in the amount of the cash proffers.

Jacobson explained that under the County's policy, a rezoning applicant can proffer, in lieu of cash, the

5

construction of road or sidewalk improvements, or "a myriad of [other] ways" of addressing the impact of the proposed development on public facilities and infrastructure. He testified that since the County adopted its voluntary proffer policy, about 5,500 new lots have been created through rezoning approvals, and that about 51% of those lots were either approved with no cash proffer or cash proffers of less than the recommended amount.

Donald J. Balzer, who qualified as an expert in land use issues, testified that "the most appropriate and reasonable use" of the property was an R-9 classification, which allowed an even greater density than the R-12 classification Harriss sought. However, he also acknowledged that a reasonable use of the property under its present agricultural classification would be to "leave it as it is" or to subdivide it into two or three lots for single family residences.

The trial court noted that "[p]ersuasive evidence exists that full cash proffers or lack thereof played a key factor in the Board['s] determination." The court found that there was evidence from which to conclude that the County "expected" cash proffers, but that "the evidence is not as definitive" as the evidence presented in Board of Supervisors v. Reed's Landing Corp., 250 Va. 397, 463 S.E.2d 668 (1995). The court then concluded that the evidence of the proposed development's impact

on health, safety, and welfare made the reasonableness of the Board's decision "fairly debatable."

The trial court further ruled that the Board's decision was not arbitrary or capricious because there was evidence that two zoning classifications were reasonable for the property, the existing "Agricultural A" classification and the proposed R-12 classification. The court entered judgment affirming the Board's decision and dismissing the motion for declaratory judgment.

On appeal, Harriss first argues that the evidence showed that the Board effectively imposed a proffer requirement, contrary to Code § 15.2-2298[*] and this Court's decision in <u>Reed's Landing</u>. In response, the Board argues that the trial court did not err in concluding that the Board based its decision on legitimate and mandatory considerations of public health, safety, and welfare. The Board contends that, based on the record in this case, its denial of the final application did not violate Code § 15.2-2298 or this Court's holding in <u>Reed's Landing</u>. We agree with the Board.

Initially, we note that, at all times relevant to this appeal, Chesterfield County had in effect a conditional zoning

---

[*]Effective December 1, 1997, Title 15.1 was re-codified as Title 15.2 and Code § 15.1-491.2:1 became Code § 15.2-2298. 1997 Va. Acts of Assembly, ch. 587. Since there were no

ordinance authorized by Code § 15.2-2298.  This statute permits localities that have experienced specified population growth to implement conditional zoning in which a landowner is permitted, prior to a hearing before a governing body, to submit voluntary written proffers of "reasonable conditions" as part of the landowner's proposed amendment to the zoning ordinance.  Code § 15.1-2298(A).  Those conditions may be made part of a rezoning if the rezoning itself gives rise to the need for the conditions, and if the conditions have a reasonable relation to the rezoning and are in conformity with the comprehensive plan. Id.

The declared purpose of the statutes permitting conditional zoning is to "provide for the orderly development of land" when "competing and incompatible uses conflict."  Proffers submitted by a zoning applicant are permitted "for the protection of the community" in which the property subject to the proposed rezoning is located.  Code § 15.2-2296.

These statutory provisions allow a local governing body to consider voluntarily proffered conditions as one factor in deciding whether to grant a proposed rezoning.  Although a governing body may exercise its discretion to grant or deny a rezoning request that contains such proffered conditions, the

_____

substantive changes in the sections at issue, we will refer to the current code sections in this decision.

governing body must make its decision based on the merits of the entire application and may not require that any proffered conditions be included in the rezoning application.

In Reed's Landing, we held that under former Code § 15.1-491.2:1, the predecessor statute to Code § 15.2-2298, a local governing body is "not empowered to require a specific proffer as a condition precedent to a rezoning." 250 Va. at 400, 463 S.E.2d at 670. The evidence in that case showed that there was no public opposition to the proposed rezoning, that the Powhatan County Planning Commission unanimously recommended that the rezoning be approved, and that, since the adoption of "proffer guidelines," no R-1 rezonings had been approved without the recommended cash proffer. Id. at 399, 463 S.E.2d at 669. Thus, the record supported the trial court's conclusion that the sole reason the Powhatan County Board of Supervisors denied the developer's rezoning request was the developer's refusal to make a cash proffer of a fixed amount. Id. at 400, 463 S.E.2d at 670. Under those facts, we held that the trial court correctly ruled that the proffer was not voluntary within the meaning of the statute, and that the Board imposed an unlawful condition precedent on the developer. Id.

In contrast to the record in Reed's Landing, the trial court in the present case did not find that the rezoning request was denied solely due to the absence of cash proffers in a

9

particular amount.  Although the court found "persuasive evidence" that the absence of maximum cash proffers "played a key factor" in the Board's decision, and that cash proffers were "expected," the court also found ample evidence supporting the Board's denial of the application based on health, safety, and welfare concerns.

The decision of a board of supervisors denying an application for rezoning is a legislative act that is presumed to be reasonable.  City Council v. Wendy's of Western Va., Inc., 252 Va. 12, 14, 471 S.E.2d 469, 470 (1996); County Bd. v. Bratic, 237 Va. 221, 227, 377 S.E.2d 368, 371 (1989); Board of Supervisors v. Jackson, 221 Va. 328, 333, 269 S.E.2d 381, 384 (1980).  This presumption will stand until the applicant presents probative evidence that the legislative act was unreasonable.  Id.  If the applicant's challenge is met by the board with evidence of reasonableness sufficient to render the issue fairly debatable, then the legislative action must be sustained.  Wendy's of Western Va., 252 Va. at 15, 471 S.E.2d at 471; Bratic, 237 Va. at 227, 377 S.E.2d at 371; Jackson, 221 Va. at 333, 269 S.E.2d at 385.  A matter is fairly debatable if, when evaluated by quantitative and qualitative measures, the evidence in support of the opposing views could lead objective and reasonable persons to reach different conclusions.  Wendy's of Western Va., 252 Va. at 15, 471 S.E.2d at 470-71; Board of

10

<u>Supervisors v. Pyles</u>, 224 Va. 629, 638, 300 S.E.2d 79, 84 (1983).

Harriss challenged the presumption of reasonableness in this case with probative evidence suggesting that the Board based its decision on an impermissible proffer requirement. The Board responded to this evidence of unreasonableness with evidence that cash proffers were not required as a condition precedent to a rezoning, and that the rezoning requested by Harriss would adversely impact public health, safety, and welfare in the area of the proposed development. This evidence of reasonableness presented by the Board was sufficient to rebut Harriss' contention that the Board effectively imposed a proffer requirement on his rezoning application.

Harriss argues, nevertheless, that the Board's decision was unreasonable because the only practical, beneficial use of the property was to develop it as a residential subdivision. The Board contends in response that the evidence supports the trial court's conclusion that there were two reasonable zoning classifications for the property, the existing agricultural designation and the proposed R-12 designation. The Board asserts that, therefore, the trial court properly concluded that the Board was free to choose between these classifications. We agree with the Board.

11

A property owner seeking rezoning bears the burden of clearly demonstrating that the existing zoning classification is no longer reasonable. See Jackson, 221 Va. 334, 269 S.E.2d at 385. When an existing zoning classification and a proposed zoning classification are both reasonable, a legislative body, rather than a property owner or a court, has the prerogative to choose between those classifications. Wendy's of Western Va., 252 Va. at 18, 471 S.E.2d at 473; Board of Supervisors v. Miller & Smith, Inc., 242 Va. 382, 384, 410 S.E.2d 648, 650 (1991); Jackson, 221 Va. at 335, 269 S.E.2d at 386.

As stated above, there was evidence that an R-12 zoning classification would permit a reasonable use of the property, since such a classification would conform to the County's comprehensive plan and would be consistent with other existing and anticipated residential developments in the area. However, the evidence also established that the property was predominantly abutted by parcels zoned for agricultural use, and that existing agricultural uses were present throughout the surrounding general area. In addition, there was evidence that a reasonable use of the property under its present agricultural zoning would be to subdivide it into two or three lots.

Based on this record, we conclude that Harriss failed to meet his evidentiary burden of demonstrating that the present zoning classification of the property was unreasonable, and that

12

the merits of his rezoning application were fairly debatable. Under these circumstances, the trial court was not at liberty to substitute its judgment for that of the legislative body.  See County of Lancaster v. Cowardin, 239 Va. 522, 525, 391 S.E.2d 267, 269 (1990); City of Virginia Beach v. Virginia Land Investment Ass'n No. 1, 239 Va. 412, 415, 389 S.E.2d 312, 314 (1990).  Thus, the trial court properly upheld the Board's legislative determination.

For these reasons, we will affirm the trial court's judgment.

Affirmed.

13