COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Athey, Friedman and Lorish
Argued at Salem, Virginia


GAS CITY, LLC

               MEMORANDUM OPINION[*] BY
v.   Record No. 0084-25-3      JUDGE FRANK K. FRIEDMAN
                 NOVEMBER 18, 2025

ROCKINGHAM COUNTY BOARD
 OF SUPERVISORS


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

James P. Campbell (Mathew L. Clark; Jason L. Grace; Campbell
Flannery, PC, on briefs), for appellant.

Sheila K. Paladino, Deputy County Attorney (Office of the County
Attorney for Rockingham County, on brief), for appellee.


Gas City, LLC (Gas City) appeals the circuit court's order affirming the Rockingham

County Board of Supervisors' (Board) decision to deny Gas City's rezoning application. Gas City

argues primarily that the Board's denial was arbitrary and capricious. Finding no error, we affirm.

BACKGROUND

Gas City owns 31.248 acres of real property (Property) near the Exit 257 interchange in

Mauzy, Rockingham County. The Property is zoned in the General Agriculture (A-2) district.

Under Rockingham County Ordinance § 17-303.01, the "A-2 district is designed to implement

the comprehensive plan goals related to the preservation of the county's agricultural industry,

economy, and rural character." This is "achieved by giving preference to uses that conserve

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

agricultural and forestal land, protect water and air quality, and conserve water and other natural and ecological resources." Ord. § 17-303.01.

In April 2022, Gas City applied to rezone the Property from the A-2 district to the Business Interchange (BX) district, so it could develop a 24-hour travel center.[1] The BX district "provides services to the interstate-travelling public within a concentrated location." Ord. § 17-315.01. The ordinance creating the BX designation requires that: (a) the "BX district shall be situated within a one-half (1/2) mile of an interstate interchange as measured from the center point where the road overpass crosses the interstate," and (b) to "maintain traffic safety and flow along the fronting public streets, interparcel access shall be provided."[2] Ord. § 17-315.02.[3]

Gas City also applied for a special use permit for a truck wash, motor vehicle repair shop, and overnight parking facility on the Property. In its application, Gas City acknowledged that "a wetland or sinkhole, as delineated by a professional engineer" existed on the Property. Gas City's application also included a concept design diagram, showing the scope and size of the proposed project.

In July 2022, the Planning Commission considered Gas City's proposed rezoning. Commissioner Flint requested information on the water system and expressed concern over the distance between the Property and fire and rescue stations. The Property had no connection to public water infrastructure, so a volunteer-run fire company based several miles away would need other sources of water. Commissioners were concerned about how the project would affect

---

[1] A travel center is a prohibited land use in the A-2 district, but it is a by-right permissible use in the BX district.

[2] Rockingham County Ordinance § 17-315.04(a) provides that "All uses requiring water service shall be served by public water where available."

[3] Here, the Property's northern tip fell outside the half-mile radius from the Exit 257 interchange, but the majority of the tract was within the operative radius.

- 2 -

private water availability for neighboring properties. Other concerns included traffic, pollution, and incompatibility with the County's comprehensive plan. After the July 2022 hearing, the Commissioners voted to defer the rezoning application.

In August 2022, the Planning Commission reconsidered the application. Commissioner Flint moved to deny the rezoning because of traffic concerns, the project's reliance on private water and sewer infrastructure, and the project's lack of alignment with the county's comprehensive plan.[4] Commissioner Harvey and Commissioner Rohrer expressed concerns over the water and sewer issues. Despite the concerns, the Planning Commission voted 3-2 to recommend approval of Gas City's rezoning application. Commissioner Sheets stated: "I think this is one of those cases where reasonable minds can disagree." Commissioner Sheets asserted that the proposed use met the requirements of BX zoning. The proposal then moved to the Board.

At an August 2022 public hearing, the Board received comments and then denied Gas City's application for rezoning by a 5-0 vote. No residents favored the rezoning, and many raised objections. Citizen concerns included traffic gridlock, potential petrochemical runoff into nearby Spring Creek, negative impacts on water quality, land use impacts, and inadequate infrastructure. Unlike alternative interchanges, the Exit 257 interchange did not have public water or sewer. The Property's lack of public water availability was a major concern. Without public water, the project would consume over 5,000 gallons a day of private well water. In addition, the Property sloped entirely toward Spring Creek, which ran within 1,500 feet of the Property, and the community had already spent millions trying to improve Spring Creek's water

---

[4] The County's comprehensive plan identified the long-term goal of preserving the quality of natural resources including surface water and groundwater.

quality. The project threatened potential runoff into the nearby Spring Creek.[5] After the Board's unanimous denial of Gas City's proposed rezoning, the Board withdrew Gas City's special use permit application.

Gas City appealed the Board's denial to the circuit court, under Code § 15.2-2285(F). Gas City argued: (a) the Virginia Department of Environmental Quality (DEQ) had exclusive jurisdiction to regulate use, quality, and access to water resources; (b) the Board's denial of the rezoning application was arbitrary and capricious because adequate groundwater was available; (c) the Board's denial was discriminatory; and (d) the Board used its rezoning denial as leverage against the Commonwealth, in violation of Dillon's Rule.

The circuit court conducted a trial and qualified two expert witnesses for Gas City—hydrogeologist Ernest Beasley and engineer David Maciolek—and three experts for the Board—JMU Geology Professor Scott Eaton, Ph.D., Director of Community Development Rhonda Cooper, and Zoning Administrator Kelly Getz. Testimony indicated that a sinkhole had developed on the Property. The Property had 20% bedrock, 8% soil, and "shallow sticky clay" with features that were unfavorable to wastewater treatment. The Property was within the Smith Creek watershed, and its geology consisted of soluble rock with cracks that water can infiltrate. Over time, infiltration of slightly acidic water into the landscape would cause dissolution channels and result in sinkholes, caves, and conduits. These conduits connected to groundwater, so contaminants within the conduits could quickly reach the aquifer. Petrochemicals on a parking lot surface could seep into the groundwater, and this runoff could pollute the groundwater.

Threats to groundwater quality conflicted with the County's comprehensive plan, which aimed to protect water resources. The County's zoning administrator offered his expert opinion

---

[5] In 2019, the DEQ had fined Gas City's owner for a raw wastewater discharge violation.

that the Board's denial of Gas City's rezoning application was reasonable and consistent with proper zoning.

The circuit court held that the Board's denial of the rezoning was not arbitrary and capricious. The circuit court credited the Board's witnesses and found that the Board had "other reasons besides water issues to deny the application." For example, it was fairly debatable whether emergency response resources would be available to support the travel center. With one exception, the circuit court adopted the Board's findings of fact, conclusions of law, and rationale in denying the rezoning.[6] Gas City appeals, arguing primarily that the Board's action was arbitrary and capricious and that the Board lacked jurisdiction over water issues, which were within the exclusive jurisdiction of the DEQ.

ANALYSIS

I. The Board Did Not Violate Its Own Ordinance

Gas City's main argument relies on the language in Ordinance § 17-315.02, which states that the "BX district *shall* be situated within one-half (1/2) mile of an interstate interchange." Ord. § 17-315.02 (emphasis added). Gas City argues that the "shall" in the ordinance means that essentially every property within one-half mile of an interstate interchange must be zoned to BX district.

We review application of statutes and ordinances de novo, "while the legislative act of a local government with respect to zoning is reviewed under a 'fairly debatable' standard." *Rowland v. Town Council of Warrenton*, 298 Va. 703, 710 (2020) (quoting *Renkey v. Cnty. Bd. of Arlington Cnty.*, 272 Va. 369, 373 (2006)). Gas City argues that the BX district criteria are "mandatory, not merely advisory." Legislative intent determines the nature of a particular "shall" command, i.e.,

---

[6] The circuit court did not adopt the Board's assertion that the matters presented at trial were not properly pled.

- 5 -

whether the term should be construed as mandatory or directory in effect. *Bland-Henderson v. Commonwealth*, 303 Va. 212, 219 (2024). The intended meaning may be "discerned from the 'nature, context, and purpose'" of the relevant statute." *Id.* at 220-21 (quoting *Huffman v. Kite*, 198 Va. 196, 202 (1956)).

It is clear from our reading of Ordinance § 17-315.02, "shall" functions as a gatekeeper for the BX district. In other words, property that meets the physical location requirement of the BX district has merely established *eligibility* for purposes of applying to the Board for rezoning to the BX district. Contrary to Gas City's argument, the ordinance does not impose an imperative duty on the Board to take any specific action. Stated another way, even if *shall* is mandatory in Ordinance § 17-315.02, it only means that the BX district requires applicants to satisfy this criterion; it does not compel the Board to rezone every parcel within a half-mile of the interchange to BX treatment if other designations are more appropriate. The fact that the property meets the threshold criterion does not necessarily mean it is suitable for such designation. Accordingly, the Board retains discretion to determine which properties, if any, should be rezoned under the BX classification. *See Gregory v. Bd. of Supervisors*, 257 Va. 530, 538 (1999) (holding that legislative bodies have the prerogative to choose between two reasonable zoning choices).

Nothing in the Ordinance or Code requires the Board to rezone a property just because the parcel could satisfy the requirements for a different category. Rather, the Board retains decision-making power where there is a fairly-debatable choice between two possible zoning options. *See City Council v. Wendy's of W. Va.*, 252 Va. 12, 18 (1996) (legislative action in denying rezoning petition was reasonable where existing and proposed use were both appropriate for the property in question); *see also Bd. of Supervisors v. Miller & Smith, Inc.*, 242 Va. 382, 384 (1991) ("When two reasonable zoning classifications apply to a property, the legislative body, the board of supervisors in this case, has the legislative prerogative to choose between those reasonable

zoning classifications."). Faced with a board's decision between two viable land-use options, the relevant inquiry on appeal is whether probative evidence in the record supports the board's choice— not which option is better. *Bd. of Supervisors v. Robertson*, 266 Va. 525, 533 (2003) (where proponent of deviation proposed an appropriate use of his property, the dispositive inquiry was whether there was sufficient evidence of reasonableness to make the board's rejection of the request for deviation fairly debatable). And evidence of risks with one proposed use may suffice to make the choice fairly debatable. *Bd. of Supervisors v. Stickley*, 263 Va. 1, 11 (2002) (holding that appraisal of risk to poultry from the release of pen-raised game birds was sufficient to make the special use permit decision fairly debatable). Here, the Board was presented with a bevy of legitimate risks involved with Gas City's rezoning request and proposed land use, thus the Board's decision to deny Gas City's rezoning request was fairly debatable and not arbitrary and capricious.

II. The Record Supports the Finding That the Board's Decision Was Fairly Debatable

Gas City contends that there is *no evidence* that the Board's action was fairly debatable because the public water and sewer concerns were "unsubstantiated." "Legislative actions, such as the grant or denial of an application for rezoning, are presumed to be reasonable both upon review before the circuit court and upon appeal." *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 15 (2024) (citing *Bd. of Supervisors v. Lerner*, 221 Va. 30, 34 (1980)). The Court need only examine whether *any* evidence in the record is sufficiently probative to make a legislative action fairly debatable. *Town of Leesburg v. Giordano*, 280 Va. 597, 608 (2010). This Court will not substitute its judgment for that of a legislative body; if the reasonableness of a zoning ordinance is fairly debatable, it must be sustained. *Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655 (1974).

Code §§ 15.2-2283 and 15.2-2284 set forth the purpose of zoning ordinances and the factors the Board must consider in amending zoning districts.[7] Weighing these factors is a legislative function reserved to the zoning authority. *Miller & Smith, Inc.*, 242 Va. at 384. There is no requirement for the Board to record its evaluation of each factor, and failure to consider statutory factors on the record does not render a legislative decision arbitrary and capricious as a matter of law. *Hartley*, 80 Va. App. at 19. Rather, courts apply a presumption of validity to whether the Board adequately considered the proper standards. *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 622 (2013).

Code § 15.2-2285 governs adoption and amendments of zoning ordinances. Under Code § 15.2-2285(A), the locality's planning commission "shall hold at least one public hearing on a proposed ordinance or any amendment of an ordinance, after notice as required by § 15.2-2204, and may make appropriate changes in the proposed ordinance or amendment as a result of the hearing." "Before approving and adopting any zoning ordinance or amendment thereof, the governing body shall hold at least one public hearing thereon, pursuant to public notice as required by § 15.2-2204, after which the governing body *may* make appropriate changes or corrections in the ordinance or proposed amendment." Code § 15.2-2285(C) (emphasis added). However, the Board is not required to rezone a property just because it satisfies the requirements for a different category. Where a proposed use that is permitted by right and another proposed use are both appropriate for the land, the situation presents a fairly debatable issue, and it is for the local governing body—not the courts—to choose the appropriate use. *Cnty. Bd. of Arlington Cnty. v. Bratic*, 237 Va. 221, 229 (1989); *Gregory*, 257 Va. at 539 (holding that where an existing and a proposed zoning classification were both reasonable, a legislative body had the prerogative to choose between

---

[7] One of the factors to be considered is "conservation of natural resources." Code § 15.2-2284.

- 8 -

classifications). "An issue may be said to be 'fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions.'" *Norton v. City of Danville*, 268 Va. 402, 409 (2004) (quoting *Bd. of Supervisors v. Williams*, 216 Va. 49, 58 (1975)). "The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare." *Turner v. Bd. of Supervisors*, 263 Va. 283, 288 (2002).

Gas City fails to carry its burden here. Gas City argues that the record is wholly absent of any evidence that would support the Board's decision. The record, however, does not support Gas City's position. The record is replete with reasons why the Board chose to deny Gas City's request: traffic gridlock, potential petrochemical runoff into nearby Spring Creek, negative impact on water quality, land use impacts, lack of infrastructure or public water access, and the existence of better alternative interchanges with public water. These concerns are sufficient to lead objective and reasonable persons to reach different conclusions regarding the proposed rezoning. *See Wendy's*, 252 Va. at 18 (evidence supporting city's endeavor to protect an existing, established, and stable residential neighborhood in furtherance of its comprehensive plan was sufficient to render the legislative action fairly debatable). Thus, the Board's decision to deny Gas City's rezoning application was fairly debatable and not arbitrary and capricious.

III. The Holding in *Renkey* Does Not Require Us to Find in Favor of Gas City

Citing *Renkey*, 272 Va. at 376, Gas City argues that it met all the eligibility requirements for the BX zoning district, so the County acted arbitrarily when it denied Gas City's rezoning application. Gas City contends that the holding in *Renkey* necessarily requires a finding that the Board's denial was arbitrary and capricious, and not fairly debatable. However, *Renkey* does not compel the result that Gas City seeks.

In *Renkey*, the county board granted a rezoning in violation of the zoning ordinance's own mandatory eligibility criteria—property not zoned "C-3" was rezoned to the "C-R" district, contrary to the ordinance's plain language. 272 Va. at 376. The Supreme Court of Virginia held that because the county's action exceeded its lawful authority, it was arbitrary and capricious. *Id.*

In *Newberry Station Homeowners Ass'n*, the Court declined to extend *Renkey* where the ordinance conferred broad discretionary authority on the board. 285 Va. at 621-22. There, the board's decision was upheld under the "fairly debatable" standard because the ordinance provisions did not impose mandatory prerequisites limiting the board's power to act, *id.* at 621, and because there was sufficient evidence in the record supporting the reasonableness of the board's decision, *id.* at 626 ("Accordingly, the record contains sufficient evidence of reasonableness to make the Board's approval of the Application fairly debatable.").

The ordinance at issue here grants the Board zoning discretion, and does not contain a mandatory condition, as Gas City argues. Accordingly, as in *Newberry Station*, *Renkey* does not control, and Gas City's reading of the case is unpersuasive.

IV. Gas City's Argument That the Board Exceeded Its Jurisdiction by Considering Water and Sewer Impacts Is Also Unconvincing

Gas City contends that Code §§ 10.1-1400 to -1407 and 10.1-2119 vest authority over groundwater and stormwater regulation in the DEQ. Under Code § 10.1-2119, the powers conferred by the Virginia Water Quality Improvement Act are "supplemental to other state and local governmental authority and do not limit in any way other water quality restoration, protection and enhancement authority of any agency or local government of the Commonwealth." Counties "are authorized to exercise their police and *zoning powers* to protect the quality of state waters from nonpoint source pollution." Code § 10.1-2119 (emphasis added). Thus, the Board did not exceed its jurisdiction in considering water pollution and preservation of natural resources. Rather, Code § 15.2-2284 specifically authorizes the Board to consider "conservation of natural resources."

- 10 -

And in any case, there were several other non-water related concerns that independently would have rendered the legislative decision fairly debatable.

## CONCLUSION

We find that the Board's decision was fairly debatable and we therefore affirm the circuit court's judgment.

*Affirmed.*