## Board of Supervisors of Fairfax County

### v.

## Virgil Jackson

August 28, 1980.

Record No. 781241.

Present: Carrico, Harrison, Cochran, Poff, Compton and Thompson, JJ.

*Kathryn M. Anderson, Assistant County Attorney (Frederic Lee Ruck, County Attorney,* on briefs), for appellant.

*Robert K. Richardson (Odin, Feldman & Pittleman, P.C.,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this zoning controversy, the local governing body refused a property owner's request to rezone a portion of his land for the purpose of resubdivision. We review the trial court's action reversing that legislative decision.

In November of 1976, appellee Virgil Jackson filed an application requesting appellant Board of Supervisors of Fairfax County to adopt an amendment to the zoning ordinance rezoning one-half acre of his 1.5-acre parcel from classification RE-1 (one-family residential, minimum lot size one acre) to RE-0.5 (one-family residential, minimum lot size one-half acre). The subject property is located in

the County's Sleepy Hollow subdivision, a roughly triangular tract lying to the south of Arlington Boulevard.

After a public hearing in September of 1977, the county planning commission, following the advice of the planning staff, recommended to the Board of Supervisors approval of the application. The Board, after an October 1977 public hearing, denied the application in November of 1977.

This litigation ensued in December of 1977 when Jackson filed a motion for declaratory judgment asking that an order be entered reclassifying the one-half acre lot from RE-1 to RE-0.5 upon the ground that the Board's action was arbitrary, unreasonable, discriminatory, confiscatory and capricious and, thus, improper. After an April 1978 hearing on the merits, the court below found in favor of the property owner, and we awarded the Board an appeal from the May 1978 final order.

Jackson resides on the 1.5-acre parcel of land, rectangular in shape, situated at the northeast corner of the intersection of Beechwood Lane, a generally north-south street, and Holmes Run Road, a generally east-west street. The parcel, purchased by Jackson in 1950, borders Beechwood Lane for nearly 218 feet and Jackson's dwelling fronts on that street. The parcel abuts Holmes Run Road for a distance of 300 feet. The property is located near the southern tip of the triangular subdivision; is bordered on the north by the 11-lot Chateau Subdivision, zoned RE-0.5; and is surrounded on the other three sides by Sleepy Hollow lots zoned RE-1.

Jackson seeks to rezone only the rear, or easterly, portion of his property in an effort to create a rectangular residential building site fronting 100 feet on Holmes Run Road.

The Sleepy Hollow subdivision, containing approximately 225 lots in four sections, was developed during the period 1938 through 1941. In 1959, the subdivision was zoned RE-1, having carried a different but equivalent classification before 1959, and no major rezoning, subdivision or resubdivision of property has occurred in the immediate area since 1960. Approximately 85 percent of the lots in the subdivision are less than one acre and the remainder are one acre or larger. A substantial majority of the lots, however, are larger than one-half acre. In Section 1, containing the subject property, about ten of the 34 subdivided lots are three-fourths of an acre or less.

During the hearing before the Board of Supervisors, six of Jackson's neighbors and a representative of the Sleepy Hollow Citizens

Association testified opposing the rezoning. The opposition voiced concern that the stability of the long-established neighborhood would be adversely affected by the rezoning and that a precedent would be set for further resubdivision of other lots, detrimental to Sleepy Hollow as a whole.

A representative of the county planning staff reported to the Board the planning commission's position in favor of the application. The staff's analysis of public facilities showed the rezoning would have no impact on transportation, sewer service, water service, school population, library availability, or fire protection.

At the conclusion of the Board's consideration of the application, one supervisor noted, "This has been a very difficult case." He further stated his concern that rezoning the subject one-half acre would cause other property owners in the area "to carve up their large lots in order to sell them off for development." He said, "Infilling on properties that are available and zoned is one thing; to start carving up an area like Sleepy Hollow which is a long established, stable neighborhood, I think would be a mistake." The Board, with two abstentions, voted unanimously to deny the application.

During the circuit court trial, the record of the hearings before the Board and the planning commission was received in evidence. In addition, Jackson introduced evidence to show that at least eight building permits for construction of single-family detached dwellings had been issued recently for various lots, less than one acre, in the general area of the subject property. Also, a member of the county planning staff testified that approval of the application would be consistent with the Comprehensive Plan for the area and that he "was aware of no adverse impacts upon the community to be anticipated from the proposed rezoning." The planner said that the subject property could not be developed unless it is rezoned and that the proposed rezoning would not set a precedent for other rezoning.

Upon cross-examination, the planner testified it was the staff's "impression" that only five or six other lots in the area could be resubdivided, so the staff did not deem Jackson's application "a dangerous precedent-setting action." He admitted the staff did not know and thus did not consider that, as the Board later proved, 35 to 40 lots in the area could be resubdivided if granted RE-0.5 zoning.

The Board's evidence showed that the 1959 zoning of Sleepy Hollow reflected the general one-acre lot size in the area at the time even though a number of the lots were smaller than one acre. Also,

the Board offered expert testimony that approval of Jackson's application would set a precedent for other rezoning and ultimate resubdivision, and that if resubdivision of the approximately 40 additional lots occurred, "an adverse impact on the stable, established character of the Sleepy Hollow area" would result.

The Fairfax County Director of Land Use Administration testified that the Comprehensive Plan in effect prior to 1975 recognized the established pattern of single-family residential housing in Sleepy Hollow, with large and small tracts within the area remaining vacant. The witness interpreted that plan "to recommend development of similar uses on large, yet undeveloped tracts." According to the witness, the present Comprehensive Plan, in effect since 1975, recommends development of "one to two units per acre" in Sleepy Hollow, consistent with the existing use of the area. He said that either RE-1 or RE-0.5 zoning would conform to the "one-to-two-units-per-acre designation" but that such description "was in no way meant to stimulate development, to allow unrestrained resubdivision, or to provide an opportunity to fill in every half acre with a residence." In support of that conclusion, the witness cited the text of the Plan which relates to Sleepy Hollow as follows:

Housing
   With very few exceptions, housing in this area is all stable single-family residential, and any additional growth should be infill or of a similar nature.

The term "infill," according to the Board's evidence, "does not include resubdivision and development of small, already developed lots such as [involved in the instant] rezoning request."

Also, the Board's evidence showed that at least three similar rezoning applications had been previously denied for the same reason assigned in this case, that is, the Board feared that a "dangerous" precedent for other similar rezonings would be set. The other rezoning requests concerned, as here, applications to change from RE-1 to RE-0.5 zoning in established residential neighborhoods.

In a letter opinion, the trial court reviewed the evidence, noting Jackson "looks upon the half acre lot as his 'nest egg for retirement'" and that Jackson is willing to resubdivide as much as three-fourths of an acre if necessary to obtain approval of his application. The court below then found from the evidence "that granting the proposed rezoning would not establish a precedent for other rezoning nor would

it detract from the stable character of Sleepy Hollow." The court concluded that Jackson had "successfully challenged the presumption of reasonableness of the action of the Board in denying the rezoning" and that "the Board's action in allowing the subject property to remain in the RE-1 category is arbitrary, capricious, discriminatory and bears no reasonable relationship to the public health, safety, morals or general welfare."

On appeal, the parties acknowledge the settled principles applicable to zoning disputes. The Board's action denying Jackson's application was legislative action; it is presumed to be reasonable. The presumption is not conclusive; it stands until surmounted by evidence that the action of the legislative body was unreasonable. And the litigant attacking the legislative act has the burden to establish unreasonableness. *Loudoun County* v. *Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980).

"Legislative action is reasonable if the matter in issue is fairly debatable. *County of Fairfax* v. *Parker*, 186 Va. 675, 680, 44 S.E.2d 9, 12 (1947). An issue may be said to be fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. *Fairfax County* v. *Williams*, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975)." *Id.*

We have established the following test for determining whether the presumption of reasonableness should stand or fall. If the presumptive reasonableness of zoning action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the presumption is defeated by the evidence of unreasonableness and the legislative act cannot be sustained. *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974).

Detailing the facts, Jackson argues the "specific" findings of the court below are fully supported by the evidence. The findings to which Jackson refers are (1) that the presumption of reasonableness has been successfully challenged, (2) that the zoning action is not fairly debatable, and (3) that the Board's action is arbitrary, capricious, discriminatory and bears no reasonable relationship to the public health, safety, morals, or general welfare. Consequently, Jackson contends, the trial court's decision is not plainly wrong and should be affirmed. We do not agree.

During the present term, we have articulated the standard of review applicable to a case of this kind.

> Upon review of a trial court's finding that the denial of a rezoning request is unreasonable, we accord the court's finding, as with the usual case, a presumption of correctness, but we also give full credit to the presumption of validity of the legislative action involved in the denial and then, assimilating the two presumptions, we examine the record to determine whether the evidence sustains the court's finding. *See Fairfax County* v. *Williams,* 216 Va. at 52, 58, 216 S.E.2d at 36, 40. In other words, the presumption of validity of legislative action does not disappear when a trial court finds that the action is unreasonable; the presumption accompanies the legislative action when the latter is brought to this court for review, and it is viable until this court holds with the trial court that the legislative action is unreasonable.

*Loudoun County* v. *Lerner,* 221 Va. at 34-35, 267 S.E.2d at 103.

Initially, we will agree with Jackson and assume: (1) the trial court correctly determined RE-0.5 zoning was reasonable for the half-acre lot in question, and (2) the landowner has produced sufficient evidence to show the refusal to rezone was unreasonable, thus overcoming the presumption. The question then becomes whether the Board has produced evidence of reasonableness sufficient to make the rezoning issue fairly debatable. We think it has.

Legislative action refusing to rezone will be sustained unless it is "clearly demonstrated that the existing zoning classification is no longer reasonable or appropriate." *Vienna Council* v. *Kohler,* 218 Va. 966, 976, 244 S.E.2d 542, 548 (1978). The trial court did not, and properly could not under this evidence, determine the underlying RE-1 zoning was no longer reasonable for the subject property. Indeed, Jackson made no effort to so prove. According to the evidence, the RE-1 classification was appropriate as reflecting the land use in the area, and other relevant zoning factors, since at least 1959. There has been no subsequent change in circumstances to make such designation presently unreasonable, either as applied generally to Sleepy Hollow or specifically to the subject 1.5-acre parcel, including the half-acre in issue. So, the evidence showed that two zoning classifications reasonably apply to the property in question.

But Jackson argues:

It matters not that RE-1 zoning may also be a reasonable zoning classification for the subject property, or may be a reasonable zoning category for Sleepy Hollow. It is difficult to imagine a situation in which, when RE-0.5, half-acre zoning has been proven to be reasonable, a less intense zoning category of RE-1, one acre lots, would be unreasonable. The question is whether or not the refusal to allow the more intense use is reasonable.

That argument misses the point. The question is not merely whether the refusal to rezone is unreasonable. Rather, the more precise inquiry is whether the landowner or the legislative body has the right to select the zoning category when the underlying zoning and the proposed zoning are both reasonably applicable to the subject property. To pose the question is to answer it.

When, as here, the underlying zoning and the new zoning are both appropriate for the lot in question, a classic case of a "fairly debatable" issue is presented. Under such circumstances, it is not the property owner, or the courts, but the legislative body which has the prerogative to choose the applicable classification.

Because the issue is fairly debatable, the legislative judgment must stand. It thus follows that the trial court usurped the legislative prerogative in annulling the Board's action. Consequently, having assimilated the two presumptions involved in this review, we hold the trial court erred in deciding the denial of Jackson's application was "arbitrary, capricious, discriminatory and [bore] no reasonable relationship to the public health, safety, morals or general welfare."

For these reasons, the judgment below will be reversed and Jackson's motion for declaratory judgment will be dismissed.

*Reversed and final judgment.*