## County Board of Arlington County

### v.

### Peter Bratic

Record No. 860751

March 3, 1989

Present: All the Justices

*Cynthea L. Perry, Deputy County Attorney (Charles G. Flinn, County Attorney,* on briefs), for appellant.

*Jerry K. Emrich (Walsh, Colucci, Stackhouse, Emrich & Lubeley, P.C.,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

This is an appeal in a zoning case. The litigation began with the filing by the landowner, Peter Bratic, of a motion for declaratory

judgment against the County Board of Arlington County. The motion sought the reversal of the County Board's denial of Bratic's application for a use permit to build a semi-detached, two-family dwelling on a lot on North Fourteenth Street in Arlington County. The trial court granted Bratic the relief he sought, and the County Board appeals.

Bratic is a real estate broker and developer. In 1984, he purchased the lot in question, which was unimproved except for a garage and a shed, along with an adjoining lot, which was improved with a single-family dwelling. Both lots were zoned R-5, which permits the construction of a detached, single-family dwelling on a 5,000 square-foot lot with a "minimum average" width of 50 feet.

Bratic did not plan to change the use of the adjoining lot because he did not consider it economically feasible to demolish the existing dwelling and replace it with a two-family structure. He planned, however, to erect a semi-detached dwelling for two-family use on the lot in dispute. The R-5 zoning classification permits the construction of such a structure on a lot containing 7,000 square feet and having a "minimum average" width of 70 feet, but only with a use permit granted by the County Board. Bratic's unimproved lot contains 10,010 square feet and has a minimum average width of 70 feet.

The lot is located within the interior of a three-block by four-block area known as the "Northeast Portion of the Ballston-Virginia Square Neighborhood" (the Neighborhood). Consisting mainly of older single-family dwellings, the Neighborhood is bounded on the north by Route 66, an interstate highway leading to Washington, D. C., on the east by North Kirkwood Road, a four-lane divided thoroughfare, on the south by Washington Boulevard, a major local traffic artery, and on the west by North Quincy Street, a secondary local traffic artery. A county high school is located on the opposite side of North Quincy Street, and a public elementary school is located in the northerly portion of the area, adjacent to I-66.

R-5 zoning and single-family residential uses predominate in the Neighborhood, but it also contains a mix of other zoning classifications and uses. A section of R-6 zoning, allowing single-family dwellings by right and two-family dwellings by use permit, is located on North Kirkwood Road. A commercial area and a five-story apartment building are located on Washington Boulevard.

Another area zoned for commercial use is located in the vicinity of I-66. A 33-unit townhouse development fronts on North Kirkwood Road.

In addition, spotted throughout the Neighborhood are a number of two- and three-family dwellings. A three-family dwelling is located immediately to the rear of the lot in question, another is located three lots to the west on the same side of the street, and yet another is located farther west on the opposite side of the street. These multi-family uses, however, as well as others located in other areas of the Neighborhood, were established prior to the adoption of a 1962 zoning ordinance amendment which requires the issuance of use permits for construction of semi-detached dwellings. In all, there are 62 dwelling units in the Neighborhood that "are not [in] single-family structures."

The 1962 amendment includes the following statement of purpose for the R-5 district:

The purpose of this district is to provide for single-family dwellings . . . and to provide, under certain circumstances, for two-family dwellings on lots of such size as follows the progression in residential density established in this ordinance. Much of the two-family development may replace older single-family dwellings on standard lots. Two-family units should have as many of the single-family amenities as possible.

Another section of the ordinance establishes the criteria for the issuance of use permits. This section states:

Use permits may be issued for any of the conditional uses for which a use permit is required by the provisions of this ordinance, provided, that the County Board shall find that, after a duly advertised hearing, the use will not (1) affect adversely the health or safety of persons residing or working in the neighborhood of the proposed use; (2) be detrimental to the public welfare or injurious to property or improvements in the neighborhood; (3) be in conflict with the purposes of the master plans of the county. In granting any use permit the County Board shall designate such conditions in connection therewith as will, in its opinion, assure that the use will conform to the foregoing requirements and that such use will continue to do so.

Bratic filed his application for a use permit on September 24, 1984. The county staff recommended approval, but, after a duly advertised hearing, the County Board denied the application. On March 1, 1985, Bratic filed the present proceeding in which he sought to overturn the County Board's action.

The trial court heard the matter ore tenus. In an oral opinion delivered from the bench, the court found that Bratic's proposed use met or exceeded the technical requirements of the zoning ordinance for semi-detached, two-family use of the lot in question. The court found further that the proposed use satisfied the criteria established by the zoning ordinance for the issuance of use permits.

Citing one instance in 1980 and another in 1984 where the County Board approved the construction in the Neighborhood of semi-detached dwellings for two-family use, the court stated that, by comparison, Bratic's proposal had greater merit and that the denial of his application denied him "the equal protection of the law." The 1980 case involved the approval of two semi-detached, two-family structures at the intersection of North Nelson and North Thirteenth Streets, and the 1984 case involved the approval of three semi-detached, two-family dwellings at the intersection of North Quincy and North Thirteenth Streets.

The court also observed that, while the County Board's decision to grant or deny a use permit is a legislative matter, "the point of this case is that there can be a set of circumstances where [a use permit] cannot be denied." With respect to evidence adduced by the County Board indicating it would be economically feasible to develop the lot for single-family use, the court stated this did not mean "that [the property] can be treated by the government in any way that it wishes to treat it." In sum, the court made clear its belief that this was a case in which the County Board had no choice but to grant the application.

Elaborating on this theme, Bratic, the landowner, asserts on appeal that "[a] governing body may not deny a use permit application if it complies with its regulations even if a reasonable use is permitted by right." An applicant for a use permit, Bratic says, "is seeking approval to use his property for a use provided for in the zoning district regulations; he is not seeking to have the regulations changed as occurs in a rezoning." Hence, Bratic maintains, the County Board "confuses a rezoning application with a use permit application" when it contends it may deny a use permit so

long as the zoning regulations allow a reasonable use as a matter of right.

This is the lesson, Bratic claims, of this Court's decision in *Fairfax County* v. *Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982), and he quotes the following passage from that case to prove his point:

> The legislature may require certain uses, which it considers to have a potentially greater impact upon neighboring properties or the public than those uses permitted in the district as a matter of right, to undergo the special exception process.[1] Each site is to be examined by public officials, guided by standards set forth in the ordinance, for the impact the use will have if carried out on that site. Although the uses in such special exception categories are permissible under the ordinance, such permission is to be granted subject to such limitations and conditions as public officials may impose in order to reduce the impact of the use upon neighboring properties and the public to the level which would be caused by those uses permitted as a matter of right.

*Id.* at 521-22, 297 S.E.2d at 722 (footnote and citations omitted).

■ We do not read *Southland* to mean that a local governing body is stripped of all discretion in the issuance of a use permit merely upon a showing that the technical requirements of a zoning ordinance have been met. Indeed, in *Southland* we pointed out that the exercise of the power to grant or deny a use permit is "a legislative, rather than an administrative[,] act." *Id.* at 522, 297 S.E.2d at 722.

■ Neither can *Southland* be read to say there is one set of rules for reviewing use-permit cases on the one hand and another set governing rezoning cases on the other. If there was any doubt on the subject, we removed the doubt in our most recent use-permit case. In *City Council of Virginia Beach* v. *Harrell*, 236 Va. 99, 372 S.E.2d 139 (1988), we cited *Southland* and said that "[t]he standards of judicial review applicable to zoning enactments also apply to actions taken by a local governing body on an

---

[1] The opinion in *Southland* makes clear that "[t]he terms 'special exception' and 'special use permit' are interchangeable." 224 Va. at 521, 297 S.E.2d at 721.

application for a conditional use permit." *Harrell*, 236 Va. at 102, 372 S.E.2d at 141.

■■■ The standards of judicial review were summarized in a recent case closely analogous to the present situation. In *Fairfax County* v. *Jackson*, 221 Va. 328, 269 S.E.2d 381 (1980), the landowner applied for a rezoning from a residential classification requiring one-acre lots to another permitting half-acre lots so he could subdivide his 1.5-acre parcel into two building sites. The board of supervisors denied the application, and the circuit court reversed the board. We reversed the circuit court, saying the court had "usurped the legislative prerogative." *Id.* at 335, 269 S.E.2d at 386.

In the course of our opinion, we said:

The Board's action denying Jackson's application was legislative action; it is presumed to be reasonable. The presumption is not conclusive; it stands until surmounted by evidence that the action of the legislative body was unreasonable. And the litigant attacking the legislative act has the burden to establish unreasonableness. *Loudoun County* v. *Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980).

'Legislative action is reasonable if the matter in issue is fairly debatable. *County of Fairfax* v. *Parker*, 186 Va. 675, 680, 44 S.E.2d 9, 12 (1947). An issue may be said to be fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. *Fairfax County* v. *Williams*, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975).' *Id.*

We have established the following tests for determining whether the presumption of reasonableness should stand or fall. If the presumptive reasonableness of zoning action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the presumption is defeated by the evidence of unreasonableness and the legislative act cannot be sustained. *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974).

*Jackson*, 221 Va. at 333, 269 S.E.2d at 384-85.

■ As we did with the landowner in *Jackson*, we will assume that the use proposed by Bratic here is reasonable and that he has produced probative evidence of unreasonableness in the denial of the use permit. The question then becomes, as it became in *Jackson*, whether the governing body has met the challenge by producing sufficient evidence of reasonableness to make the use-permit issue fairly debatable. We concluded in *Jackson* that the governing body had produced sufficient evidence of reasonableness. We reach the same conclusion here, and on much the same basis.[2] We stated in *Jackson*:

The Board's evidence showed that the 1959 zoning . . . reflected the general one-acre lot size in the area at the time even though a number of the lots were smaller than one acre. Also, the Board offered expert testimony that approval of Jackson's application would set a precedent for other rezoning and ultimate resubdivision, and that if resubdivision of the approximately 40 additional [large] lots occurred, 'an adverse impact on the stable, established character of the . . . area' would result.

221 Va. at 331-32, 269 S.E.2d at 384.

Here, the County Board's evidence showed that the area in question is "a neighborhood that is predominantly single-family" even though "[i]t does have a mix of single-family with two-family, some triplexes, some limited multi-family, some commercial on the edge." Also, the County Board offered expert testimony that the character of the Neighborhood was "fragile," meaning "[s]ubject to change" because of "request[s] for additional two-family construction, perhaps for rezoning for more intense uses."

[2] Bratic makes an argument concerning the unreasonableness of existing zoning regulations that was not made in *Jackson*, viz., it is not economically feasible to develop the lot in question for single-family use. The County Board, however, put on the testimony of an expert who said that one could develop the lot in question for either single- or two-family use and "make a profit that would warrant the risks that [one would] take in order to develop it." The witness testified further that there would be less risk in a single-family project with a house selling in the $160,000 to $170,000 range. One of Bratic's own witnesses testified that one could "possibly" make a profit in excess of $18,000 by developing the lot with a single-family dwelling priced at $160,000. And even Bratic admitted that a profit, albeit a small one, could be made by developing the lot for single-family use.

And, when asked what there was about Bratic's proposal "that would create a precedent," the expert replied:

The fact that the proposal is within the interior of a neighborhood as opposed to the fringe. The fact that the proposal is on a block faced with adjoining property of single-family dwellings, not two-family. The fact that there [is a] significant number of lots . . . within the neighborhood, in excess of 40[,] which enjoy a lot size in excess of 7,000 square feet and a width of 70 feet [and which thus qualify for two-family development].

But, as noted previously, Bratic argues that it is unreasonable for a governing body to "deny a use permit application if it complies with . . . regulations even if a reasonable use is permitted by right." We answer this argument by paraphrasing the answer we gave to a similar argument in *Jackson*:

That argument misses the point. The question is not merely whether the refusal to [grant a use permit] is unreasonable. Rather, the more precise inquiry is whether the landowner or the legislative body has the right to select the [use] when the [use permitted by right] and the proposed [use] are both reasonably [appropriate for] the subject property. To pose the question is to answer it.

When, as here, the [use permitted by right] and the [proposed use] are both appropriate for the lot in question, a classic case of a "fairly debatable" issue is presented. Under such circumstances, it is not the property owner, or the courts, but the legislative body which has the prerogative to choose the [appropriate use].

*Jackson*, 221 Va. at 335, 269 S.E.2d at 386.

Bratic makes the final point that the denial of his application for a use permit was discriminatory, constituting a denial of equal protection, because the County Board in 1980 and 1984 granted use permits for two-family dwellings in situations similar to the case at bar. The County Board contends that the earlier cases were factually dissimilar, and we tend to agree. We prefer, however, to rest our decision on a legal ground.

The legal ground is that a claim of unlawful discrimination cannot prevail if there is a rational basis for the action alleged to

be discriminatory. *Bd. Sup. James City County* v. *Rowe*, 216 Va. 128, 135, 216 S.E.2d 199, 206 (1975). *See also City of Manassas* v. *Rosson*, 224 Va. 12, 18, 294 S.E.2d 799, 802 (1982), *appeal dismissed*, 459 U.S. 1166 (1983). Here, we think the County Board's effort to preserve the single-family character of the interior of the Neighborhood provides a rational basis for the denial of Bratic's application.

For the reasons assigned, we will reverse the judgment of the trial court and enter final judgment here declaring that the County Board's denial of Bratic's application for a use permit was not improper.

*Reversed and final judgment.*