COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia

UNPUBLISHED

AXIOS PARTNERS, LLC

MEMORANDUM OPINION[*] BY
v.      Record No. 0815-23-1          JUDGE MARY GRACE O'BRIEN
JULY 30, 2024

NORTHAMPTON COUNTY
 BOARD OF SUPERVISORS, ET AL.


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
W. Revell Lewis, III, Judge

Kevin E. Martingayle (Patricie Drake; Bischoff Martingayle, P.C.,
on briefs), for appellant.

Blaire H. O'Brien (Jeremy D. Capps; Harman, Claytor, Corrigan &
Wellman, on brief), for appellees.


This is an appeal from an order affirming the denial of a special use permit by a county

board of supervisors.

Axios Partners, LLC applied for a special use permit to construct 6 "tourist cottages" on

48.11 acres of land in Northampton County. The parcel was in a district zoned as

Agricultural/Rural Business ("A/RB"). Under the County's zoning ordinance, the maximum

density in an A/RB district was 1 "dwelling unit" per 20 acres. At the time of Axios's

application, the zoning ordinance also permitted tourist cottages as a possible land use in A/RB

districts under a special use permit. The County's Board of Supervisors denied Axios's

application, finding that the proposed development plan exceeded A/RB density restrictions.

Axios appealed to the circuit court, which affirmed.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Appealing further here, Axios argues that the circuit court erred in finding that a tourist cottage was a "dwelling" subject to A/RB density restrictions. Axios also challenges the court's determination that the Board "did not act in an arbitrary and capricious manner" or "violate anyone's constitutional rights." Finally, Axios argues that the court articulated an erroneous legal standard and therefore "either relied upon an erroneous standard or was confused about the correct standard, which resulted in an erroneous decision." For the following reasons, we affirm.

BACKGROUND

I. Northampton County's Zoning Ordinance

i. General Provisions

Northampton County adopted the zoning ordinance applicable to this appeal in 2016. It incorporates aspects of prior ordinances. *See, e.g.*, Northampton Cnty., Va. Zoning Ordinance (hereinafter, "NCZO"), Appendices D and E. As a result, the zoning ordinance contains definitions, allowable uses, and requirements for each district in multiple provisions, and the Board occasionally amends the ordinance to remove obsolete or redundant terms.

The zoning ordinance contains provisions defining zoning districts (NCZO § 154.2.081), land uses (NCZO § 154.2.128), and a process for obtaining a special use permit to implement certain uses not allowed "by right" in a particular zoning district (NCZO § 154.2.042). It defines the uses, densities, and dimensions generally applicable to each zoning district (NCZO § 154.2.125). This latter section (NCZO § 154.2.125) incorporates two appendices critical here: (1) Appendix A, which is a chart of uses permitted both by right and pursuant to a special use permit for each zoning district; and (2) Appendix B, which defines minimum lot sizes, setbacks, densities, and other requirements "for structures in all zoning districts."

ii. Special Use Permits

An application for a special use permit must address specific factors regarding the plan for the development, and it must include a "written [s]tatement of [j]ustification" providing a "project overview and a summary of the concepts behind the project." NCZO § 154.2.042(B)(1)(a). County staff members review the application and make a recommendation to the Planning Commission and Board regarding the application's compliance with the zoning ordinance and the comprehensive plan. NCZO § 154.2.042(B)(2), (4). The Planning Commission holds a public hearing and makes a recommendation to the Board, which then conducts another public hearing on the application. *Id.*

The Board's grant or denial of a special use permit is discretionary. NCZO § 154.2.042(A) (stating that the Board "may" issue a special use permit). The Board's discretion is guided by 11 criteria related to preserving the health, safety, and general welfare of the County's citizens. NCZO § 154.2.042(B)(4). The Board may only issue a special use permit if all 11 criteria "are adequately addressed" by the applicant. *Id.*

iii. The Agricultural/Rural Business Zoning District

The A/RB zoning district is one of 12 primary zoning districts in the County. NCZO § 154.2.081(A). The zoning ordinance specifies that the purpose of the A/RB district is "[t]o preserve the prime agricultural soils of the county," "maintain the rural character of the county and its agricultural activities," protect the "Right to Farm" set forth in Code § 3.2-301, "provide for farm agritourism activities on agricultural operations," and "provide for low density, rural housing compatible in aspect, design[,] and form with the rural, agricultural quality of the [d]istrict." NCZO § 154.2.082(B).

Appendix B to the zoning ordinance defines the maximum density of development in the A/RB district as 1 "dwelling unit" per 20 acres.

iv.  Definitions

The zoning ordinance defines "dwelling" as

> [a] structure or part of a structure containing one or more dwelling units.  Dwellings may be further identified as one-family (or single-family), duplex, multiple-family semi-detached, or attached.  Dwelling units contain independent living facilities, and generally contain *permanent provisions for living, sleeping, eating, cooking, and sanitation*.

NCZO § 154.2.003 (emphasis added).

A "dwelling unit," in turn, is defined as

> [a] single complete independent living facility for one or more families or persons physically separated from any other dwelling unit which may be in the same structure.  An independent living facility includes *permanent provision for living, sleeping, eating, cooking, and sanitation . . . .*  The presence of a bathroom containing a sink and toilet shall constitute permanent provisions for sanitation.  Dwelling units are a unit of measurement used as one of the components to calculate density.

*Id.* (emphasis added).

At the time of Axios's application, the zoning ordinance provided for "tourist cottage" as a possible land use, defining that term as

> [a] commercial enterprise consisting of small, separated structures, each with sleeping accommodations, and which may have cooking facilities, intended for short-term vacation rentals and subject to transient occupancy taxation; *not intended as permanent housing*.

*Id.* (emphasis added).

The chart of land uses in Appendix A addressed tourist cottages under the following label: "Tourist cottage (not intended for permanent residence) up to 12."  As provided in Appendix A, tourist cottages were permitted by right in only two of the County's zoning districts but required special use permits in all others, including A/RB.  The phrase "up to 12" indicated that, when allowed by right or by special use permit, as many as 12 tourist cottages could be built.

- 4 -

Having defined "tourist cottage" as a "short-term vacation rental," the zoning ordinance further defined a "short-term rental unit" as a "*dwelling unit* or part thereof, intended for occupancy or lodging purposes, in which accommodations are provided for a period of fewer than 30 days to overnight guests for a fee, hosted or unhosted." NCZO § 154.2.003 (emphasis added).

II. Axios's Application for a Special Use Permit and Public Hearings

Axios applied for a special use permit in December 2021. The application proposed the development of a single-family residence and an additional 12 "tourist cottages" on a parcel of 48.11 acres in an A/RB zoning district. Thus, Axios proposed constructing 13 structures, with a density of 1 per 3.7 acres, in a zoning district that typically allowed a density of only 1 dwelling unit per 20 acres.

County staff members evaluated the application and issued a report recommending denial, finding that the proposed use did not comply with density standards applicable to land zoned A/RB. The report observed that "[i]f density is ignored, essentially any parcel could be developed with 12 cottages with no size limitations, no acreage limitations, no density limitations, and few restrictions at all[,] which is contrary to the intent of the zoning ordinance." Further, the report stated that the proposed use "would especially harm the agricultural community with density being one of the greatest tools in preserving farmland."

The report expressed groundwater and environmental concerns and found that Axios's proposal failed to adequately address drainage, potentially implicated a state-protected preservation area, and sought to use an easement without permission. Significantly, the report found Axios's proposal deficient in 10 of the 11 criteria for evaluating special use permits. For example, the proposed use was found to be inconsistent with the County's comprehensive plan to "maintain the existing agricultural character of [r]ural [a]reas" and "protect farms from nuisance

complaints." The addition of numerous short-term rentals was not complementary to existing agricultural and residential uses of the surrounding parcels.

Finally, County staff members recommended removing the "tourist cottage" land use from the zoning ordinance, due to its overlap with the definition of "short-term rental unit."

In its letter of justification required by the zoning ordinance, Axios acknowledged that its proposed use exceeded the "1 unit per 20 acres" density requirement. Axios argued, however, that the "use chart[] [in Appendix A] allows up to 12 tourist cottage units on agricultural property with a special use permit" and therefore reflected "an exception to the density requirements." Axios also appealed to the discretion of the Planning Commission and Board of Supervisors, urging that they "can determine if this parcel in question is adequate for the use of the tourist cottages (up to 12) on this property."

The Planning Commission conducted two public hearings. It suspended consideration of the application at the first hearing "because of missing information and confusion as to the application of performance standards." This missing information included specifications as to setbacks, dimensions, locations of streams and buffers, and proposed sewage disposal. The Planning Commission also questioned whether the proposal complied with density regulations. The County Attorney provided a written response opining that the A/RB density requirements applied to the "tourist cottage" use and therefore tourist cottages could only be constructed at a density of 1 unit per 20 acres. The Planning Commission reconsidered Axios's application at the second public hearing and recommended that the Board deny it.

The Board reviewed the application at a public hearing on March 8, 2022. It received 3 written comments supporting the application, 1 "letter of concern" regarding protections for a gravesite, and at least 28 comments in opposition. The Board also received a petition in opposition to the application, signed by 573 residents of the County.

At the beginning of the public hearing, Axios modified its request from 12 tourist cottages to 6 tourist cottages. William Parr, a representative for Axios and long-time real estate broker in the County, offered comments in which he argued that the density requirements did not apply to tourist cottages because they were a "commercial enterprise." He argued that the cottages would meet a growing need for short-term accommodations near a state park. An attorney for Axios then reiterated the argument that the density regulations did not apply.

The Board heard comments from eight citizens and, finally, from Axios's majority partner, Angelo Manuel, who addressed questions regarding septic systems, location of the structures, and their size.

After considering the application, the County staff report, and public comments, the Board voted unanimously not to approve the project. The Board also voted unanimously to refer a zoning text amendment to the Planning Commission to remove "tourist cottages" as a defined use in the zoning ordinance. *See* NCZO § 154.2.043 (providing the process for zoning text amendments). At a subsequent meeting in May 2022, the Board formally approved a zoning text amendment removing "tourist cottages" from the zoning ordinance.

III. Appeal to Circuit Court

Axios appealed to the circuit court, naming both the Board and County as defendants.[1] *See* NCZO § 154.2.042(B)(7) (authorizing circuit court appeals from any "decision of the Board approving or failing to approve a proposed special use permit"); *accord* Code § 15.2-2285(F).

At trial, the court received the record from proceedings below and heard testimony from several witnesses. Axios first called Adrian Colaprete, a developer who attempted to apply for a

---

[1] In the circuit court and on appeal here, the Board and County filed joint pleadings. Accordingly, for purposes of this appeal only, we refer to the entities interchangeably. *Cf. Miller v. Highland County*, 274 Va. 355, 367 (2007) (stating that "a 'locality' and its 'governing body' are not interchangeable terms but have separate legal identities that must be observed in initiating an action against either as a party defendant in a legal action").

special use permit in April 2022—that is, after the Board denied Axios's application but before it amended the zoning ordinance to remove the "tourist cottage" use. According to Colaprete, County staff refused to accept his application because "they were going to abolish the tourist cottage." He admitted, however, that County staff encouraged him to reapply as a short-term rental.

Axios also called Parr and Manuel, who reiterated comments they had made at the public hearing. Specifically, Parr stated that density regulations should not apply to commercial enterprises, and he submitted that the County needed additional hotel rooms and short-term rentals. Manuel described Axios's application, argued that tourist cottages were not dwellings because they were subject to "transient taxes" like motel rooms, and explained the decision to reduce the original 12-cottage request to 6. Although he believed that "up to 12" tourist cottages were allowed under the zoning ordinance regardless of acreage and density, he said that Axios reduced the request "to help out a little bit" with the application's viability.

The Board presented testimony from Susan McGhee, the County's director of the Department of Planning, Permitting, and Enforcement. She stated that the comprehensive plan "seeks to maintain the existing agricultural character of rural areas through use, design, and regulatory means" and that "[n]on-agriculture-related industrial and commercial uses and re-zonings to allow higher intensity or higher density uses are discouraged."

McGhee also testified regarding the amendment to the zoning ordinance that removed "tourist cottages" as an approved land use. She explained,

> [I]t was the opinion of the Board that the definition of tourist cottages is outdated and imprecise and that accommodations for tourists can best be served through dedicated lodging venues, such as campgrounds and state parks. While it was the Board's opinion that the tourist cottage use must comply with the underlying density requirement, the . . . standard is not clearly denoted in the zoning ordinance text. In order to avoid future misunderstandings,

it is the Board's opinion that the use should be deleted in its entirety.

The Board's chair, Mary Elizabeth Mapp, also testified. She confirmed that in making its decision, the Board considered Axios's willingness to reduce the requested number of tourist cottages from 12 to 6, the County staff report, and the public comments.

## IV. Circuit Court's Ruling

The court determined "that a tourist cottage is a type of dwelling; and, consequently, it was appropriate for density to be a factor in the special use permit process." It found that Axios had "recognized that density was an issue and was a consideration" by reducing its request from 12 to 6 cottages and arguing that the impact of its development would be minor.

The court ruled that because "[t]he issue in this matter was fairly debatable," it was "not going to disturb the decision of the Board of Supervisors." Finally, the court found that the Board "did not act in an arbitrary and capricious manner, nor [did it] violate anyone's constitutional rights."

Accordingly, the court ruled "in favor of the Board of Supervisors with respect to the special use permit as well as with respect to the amendment to the zoning ordinance." The court "ruled in favor of the [Board] on all constitutional issues [Axios] raised."

## ANALYSIS

### I. Standard of Review

Issues related to the interpretation of ordinances present questions of law that appellate courts review de novo. *Alexandria City Council v. Mirant Potomac River, LLC*, 273 Va. 448, 455 (2007) (stating that "[i]nterpretation of a[n] . . . ordinance, like interpretation of a statute, is a pure question of law, subject to de novo review").

Additionally, a decision to grant or deny a special use permit is a "legislative action" that "courts review under the 'fairly debatable' standard." *Manors LLC v. Bd. of Supervisors*, 76

Va. App. 737, 750 (2023) (quoting *Cnty. Bd. of Arlington v. Bratic*, 237 Va. 221, 227 (1989)).

Courts "presume that all legislative acts are reasonable" until the property owner or developer

presents "probative evidence of unreasonableness." *Id.* (quoting *Bratic*, 237 Va. at 227). The

governing body—here, the Board of Supervisors—then "bears the burden to present evidence

that the decision was reasonable." *Id.* If the evidence shows that the decision was "at least

'fairly debatable,' then the legislative act is valid and must be upheld." *Id.* (quoting *Bratic*, 237

Va. at 227).

II. Density as a Factor for the Special Use Permit

Axios first argues the court erred in "finding that a tourist cottage is a type of dwelling;

and, consequently, it was appropriate for density to be a factor in the special use permit process."

Axios contends that because "tourist cottages" are defined as "not intended as permanent

housing," they cannot be "dwellings" or "dwelling units," which are both defined as "generally

contain[ing] permanent provisions for living, sleeping, eating, cooking, and sanitation." Axios

also points out that the definition of "dwelling unit" uses the word density, providing that a

dwelling unit is a "unit of measurement used as one of the components to calculate density."

The definition of tourist cottage, by contrast, does not use the word density. Axios submits that,

based on these distinctions among the definitions, tourist cottages are not dwellings subject to the

density restrictions applicable to dwellings.

Reviewing the court's interpretation of the ordinance de novo, we find Axios's arguments

unpersuasive. The word "permanent" is used differently in the "tourist cottages" definition

versus the definitions for "dwelling" and "dwelling unit." *See* NCZO § 154.2.003. For tourist

cottages, "permanent" refers to length of stay; for dwelling and dwelling unit, "permanent" refers

to physical characteristics of a structure. *See id.* Axios's proposed tourist cottages satisfied both

concepts of "permanent": although the cottages were "not intended as permanent housing," they

still had "permanent provisions for living, sleeping, eating, cooking, and sanitation" and thus still qualified as dwellings and dwelling units. Under a plain reading of the ordinance, therefore, tourist cottages and dwellings are not mutually exclusive categories. *See Donovan v. Bd. of Zoning Appeals*, 251 Va. 271, 274 (1996) ("The words of [an] ordinance are to be given their plain and natural meaning.").

Additionally, tourist cottages are not exempt from density considerations simply because the definition does not include the word "density." Instead, the ordinance links tourist cottages to dwelling units—and applicable density restrictions—through the definition of short-term rentals. Specifically, a "tourist cottage" is defined as a "commercial enterprise consisting of small, separated structures . . . intended for *short-term vacation rentals*." NCZO § 154.2.003 (emphasis added). A "short-term rental unit," in turn, is defined as a "*dwelling unit* or part thereof, intended for occupancy or lodging purposes." *Id.* (emphasis added). Because tourist cottages are defined as short-term rentals, and short-term rentals are defined as dwelling units, tourist cottages themselves are dwelling units.

Nevertheless, Axios insists that tourist cottages are exempt from density considerations because Appendix A to the ordinance allows "up to 12" in land zoned A/RB. According to Axios, this specific provision for tourist cottages trumps any general density restrictions in the zoning ordinance. Again, we disagree. A reviewing court's "duty [is] to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *Eberhardt v. Fairfax Cnty. Emps. Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012) (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 387-88 (1983)); *see also Renkey v. Cnty. Bd.*, 272 Va. 369, 373 (2006) (holding that ordinances are interpreted in the same manner as statutes). The phrase "up to 12" does not make density irrelevant for tourist cottages in an A/RB district; it simply means that there can be up to 12 tourist cottages by special use permit if

the acreage is sufficient. Therefore, there is no inconsistency between the restriction of 1 "dwelling unit" per 20 acres contained in Appendix B and the "up to 12" language in Appendix A. These provisions can be read as a "consistent and harmonious whole" to effectuate the County's goal to preserve the low-density, agricultural character of land zoned A/RB. *Eberhardt*, 283 Va. at 195.

The zoning ordinance could have expressly exempted tourist cottages from the density restrictions for dwelling units. Indeed, it specified three exemptions. First, it allowed the construction of a single "accessory dwelling" per primary residence. NCZO § 154.2.117. Second, it authorized special use permits to change the density from two dwelling units per acre to four in two zoning districts not at issue here. NCZO, Appendix B. Third, lots with 85% open space in an A/RB district could be developed with a density of 1 dwelling unit per 10 acres. *Id.* This final exemption did not apply because Axios's parcel did not have 85% open space. From these clearly expressed exemptions from the density restrictions, we can infer that no such exemption existed for tourist cottages. *See Wise Cnty. Bd. of Supervisors v. Wilson*, 250 Va. 482, 485 (1995) (stating that "when a statute mentions specific items, an implication arises that items not present were not intended to be included within the scope of the statute"); *Grigg v. Commonwealth*, 224 Va. 356, 364 (1982) ("When a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way.").

Axios also argues that tourist cottages are not dwellings because they are "commercial enterprises." However, nothing in the definitions of dwelling or dwelling units excludes structures that generate income or are otherwise involved in commerce. To the contrary, the zoning ordinance expressly provided that "short-term rental units"—which are, by their nature, income-generating commercial enterprises—were "dwelling units." Therefore, nothing about

the commercial nature of Axios's proposed development plan exempted it from the definition of dwelling or dwelling unit.

The gravamen of the court's ruling was that "it was *appropriate* for density *to be a factor* in the special use permit process." (Emphases added). This ruling reflects a finding that the Board's consideration of density was a proper exercise of its discretionary authority. *See* NCZO § 154.2.042(A). The zoning ordinance sets forth 11 criteria for deciding whether to grant or deny a special use permit, including consistency with the County's comprehensive plan and the "character of the neighborhood." NCZO § 154.2.042(B)(4)(c), (d). Density is a proxy for assessing whether a development plan meets these criteria. Indeed, County staff members issued a report analyzing the criteria and finding *inter alia* that the density of structures in Axios's proposal was inconsistent with the comprehensive plan and would conflict with the character of the neighborhood. Therefore, we affirm that, under the zoning ordinance, the Board had discretion to allow "density to be a factor" in considering Axios's application for a special use permit.

### III. Whether the Board Acted Arbitrarily and Capriciously or Violated Constitutional Rights

Axios next argues the court erred in finding that the Board did not act in an arbitrary and capricious manner, nor violate anyone's constitutional rights.

Axios contends that in denying the special use permit to construct six tourist cottages, and in "promptly removing the tourist cottage land use designation from the zoning ordinance," the Board and County acted arbitrarily, capriciously, and in violation of constitutional rights. It claims the evidence was "unrebutted" that the Board acted unreasonably in denying the permit by exhibiting "open hostility and discriminatory intent" against tourist cottages.

The record contains ample support for the reasonableness of the Board's decision, including the County staff's report considering the 11 criteria necessary for evaluating special

- 13 -

use permits and finding Axios's proposal to be deficient with respect to at least 10. County staff found that the proposed use conflicted with the County's comprehensive plan to protect the "right to farm" and to minimize nuisance complaints from rural residents. Staff also found that adding numerous short-term rentals to the area was inconsistent with its agricultural and residential character. The Planning Commission and Board conducted the requisite public hearings under the zoning ordinance, and the public comments overwhelmingly opposed the permit.

Although Axios faults the Board for mentioning only density considerations when denying the permit application, "[f]ailure to consider . . . factors on the record does not render a legislative decision arbitrary and capricious as a matter of law." *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 19 (2024). The Board did not ignore other criteria by focusing on density; rather, density was a proxy for assessing the propriety of Axios's development proposal under the criteria for granting special use permits. Moreover, because tourist cottages are dwellings, the Board was required to reject Axios's proposal due to its violation of density restrictions for dwellings.

Additionally, the record reveals nothing nefarious about the Board's decision to remove "tourist cottages" from the zoning ordinance. The amendment was based on guidance from the County Attorney about redundant and obsolete terms making the zoning ordinance difficult to understand and enforce. The amendment did not change the substance of the zoning ordinance but clarified that its "short-term rental" category already included so-called tourist cottages and that density requirements for dwellings applied. Testimony from Axios's own witness reflects that this amendment was non-substantive: Colaprete, the developer whose tourist-cottage application was not accepted, testified that County staff members advised him simply to reapply as a short-term rental. Given the evidence of reasonableness, the Board's decision was at least

"fairly debatable" and must be upheld. *Manors LLC*, 76 Va. App. at 750 (quoting *Bratic*, 237 Va. at 227).

Finally, the court did not err in finding that no violation of constitutional rights occurred. This issue arose out of the fact that Axios sought two forms of relief in court. First, it sought reversal of the Board's decision denying the special use permit. Second, it asserted a claim for monetary damages under Code § 15.2-2208.1(A), which provides as follows:

> any applicant aggrieved by the grant or denial by a locality of any approval or permit . . . including a . . . special use permit, . . . where such grant included, or denial was based upon, an unconstitutional condition pursuant to the United States Constitution or the Constitution of Virginia, shall be entitled to an award of compensatory damages.

Axios argued that "[b]y acting arbitrarily and capriciously, and by imposing on Axios rules, conditions[,] and zoning language not set forth in the existing provisions of the [z]oning [o]rdinance, the [Board] imposed unconstitutional conditions on Axios." The Board's decision, however, was not based on an "unconstitutional condition" within the meaning of Code § 15.2-2208.1.

The Supreme Court has recently addressed this statute, ruling that the unconstitutional condition doctrine "prevents a municipality from conditioning the grant of a land-use permit on the applicant's surrender of [its] right to just compensation for property expropriated for public use." *Bd. of Supervisors v. Route 29, LLC*, 301 Va. 134, 146 (2022). Nothing in the record shows that the Board's decision was based on a condition that would have required Axios to surrender its right to just compensation for property taken for public use. Even an arbitrary and capricious decision would not trigger a viable claim for damages under Code § 15.2-2208.1(A). Furthermore, the record does not reflect any violations of due process or equal protection by the Board in rendering its denial decision. To the contrary, the Board carefully applied the process set forth in the zoning ordinance for reviewing Axios's application.

- 15 -

The court found that the Board's decision was supported by evidence and not unreasonable. That was clearly not error. The County staff report, the public hearings and comments, and the trial testimony support this conclusion. Thus, even assuming that Axios introduced probative evidence of unreasonableness, we must still affirm the court's judgment that the decision to deny the special use permit was at least "fairly debatable." *Bratic*, 237 Va. at 227 ("If . . . evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained . . . ." (quoting *Bd. of Supervisors v. Jackson*, 221 Va. 328, 333 (1980))).

IV. Court's Articulation of the "Fairly Debatable" Standard

Axios argues that the court's ruling was premised on an erroneous legal standard. In support, Axios quotes the court's ruling:

> There's a presumption that all legislative acts are reasonable; but if the property owner presents probative evidence of unreasonableness, he defeats the presumption and then the Board bears the burden to present evidence that the decision was reasonable. If [the Board's] evidence shows that the decision was *not* at least fairly debatable, then the legislative act is valid and must be upheld.

(Emphasis added). The court evidently misspoke here, inserting an extra "not" in articulating the standard. The correct articulation, in relevant part, would have been as follows: "If [the Board's] evidence shows that the decision *was* at least fairly debatable, then the legislative act is valid and must be upheld." (Emphasis added). Axios contends that the court either relied upon this erroneous standard or was confused about the correct standard, which resulted in an erroneous decision to find in favor of the Board.

Based on our review of the record, we conclude that the court merely misspoke and that this verbal slip does not reflect legal error. As discussed above, the court properly applied the "fairly debatable" standard. Because the Board met its burden to present evidence that its

decision was reasonable, the court found that the denial of the special use permit was at least "fairly debatable" and therefore valid. The record supports this decision, and therefore we affirm.

## CONCLUSION

For these reasons, we affirm the circuit court order dismissing Axios's appeal with prejudice.

*Affirmed.*